Hearing Date: January 11, 2023 at 11:00 a.m. (ET)
Objection Deadline: January 4, 2023 at 4:00 p.m. (ET)

**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.

*Proposed Counsel for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TIMES SQUARE JV LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11715 (JPM)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
AUTHORIZING REJECTION OF THE LICENSE AGREEMENT WITH IHG**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their proposed undersigned counsel, hereby file this motion (the "Motion"), pursuant to sections 105(a) and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an order, substantially in the form attached hereto as **Exhibit B** (the "Proposed Order"), authorizing CPTS Hotel Lessee LLC ("CPTS") to reject that certain license agreement dated as of July 1, 2012 between CPTS and Holiday Hospitality

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Times Square JV LLC (6123), CPTS Hotel Lessee LLC (6401), 1601 Broadway Holding LLC (3359), and 1601 Broadway Owner LLC (6463). The mailing address for the Debtors is 15 East Putnam Avenue, Suite 406, Greenwich CT 06830.

Franchising LLC ("Holiday Hospitality") (as amended, supplemented, or otherwise modified from time to time, the "License Agreement") effective as of the Petition Date, defined below.  CPTS submits that granting the Motion is key to the strategic rebranding of what is currently referred to as The Crowne Plaza Times Square Manhattan Hotel (the "Hotel"), which will enable the Debtors to increase and sustain occupancy, reservation, and revenue levels, service their debt, and best position themselves for future, long-term growth.  In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Richard J. Shinder in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), the *Declaration of Richard J. Shinder in Support of Debtors' Motion for Entry of an Order Authorizing Rejection of the License Agreement with IHG* (the "Rejection Declaration") attached hereto as **Exhibit A**, and the evidence to be submitted at any evidentiary hearing on the Motion.  In further support of the Motion, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. The Hotel is currently administered as a Crowne Plaza under the InterContinental Hotels Group Resources, Inc. ("IHG") brand pursuant to the License Agreement.  As further explained in the First Day Declaration, the Hotel, which is historically the Debtors' primary driver of revenue, faced financial difficulties even prior to the COVID-19 pandemic (the "Pandemic") related shutdowns—in large part due to the underperformance associated with the License Agreement.

2. This underperformance is well documented.  CPTS and Holiday Hospitality were party to litigation commenced in 2016 wherein CPTS alleged that Holiday Hospitality failed to fulfill their obligations under the License Agreement and that the Hotel brand's performance fell materially below market with respect to key industry metrics.

2

3. This underperformance has continued, with respect to the Hotel and the Crowne Plaza brand at large. Additionally, acrimony between the parties has continued since the litigation, most notably in connection with closure of the Hotel during the pendency of the Pandemic.

4. The Debtors believe that they can obtain a mutually beneficial franchise agreement with a national hotel brand that will offer greater prospects of success than the License Agreement. To effectuate this strategic goal, the Debtors filed, concurrently with this Motion, the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* (the "Bidding Procedures Motion"), which seeks, among other things, authority for the Debtors to run a comprehensive marketing process to sell the right to affiliate with the Hotel under a new franchise agreement (the "Franchise Right").

5. Rejection of the License Agreement thus serves several purposes for the Debtors. Rejection frees the Debtors of a burdensome agreement which has historically constrained the Hotel's performance with a contract counterparty that has more often been an adversary than a partner. Rejection also allows the Debtors to signal to the marketplace that they are earnestly marketing the Franchise Right so that they can rebrand to facilitate future growth. Conversely, continuing to operate under the License Agreement would unnecessarily burden the Debtors and their estates with expense and further acrimony, and would interfere with the Debtors' sale timeline and goals.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska,

C.J.). This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. The statutory bases for the relief requested herein include section 105 and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 6006 and 9014.

## BACKGROUND

### *A.    The Chapter 11 Cases*

8. On December 28, 2022 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors have requested joint administration of the Chapter 11 Cases for procedural purposes only. As of the date hereof, no trustee, examiner, or official committee has been appointed in these cases. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9. The factual background regarding the Debtors' business, capital structure, and the events leading up to these Chapter 11 Cases is more fully set forth in the First Day Declaration.

### *B.    The Hotel and the License Agreement*

10. Debtor Times Square JV LLC ("TSJV") owns the mixed-use real estate asset (the "Premises") located at 1605 Broadway, New York, NY 10019 in central Times Square (between West 48th and 49th Streets), which includes the Hotel. Debtor CPTS is entitled to possession of and operates the Premises, including the Hotel, pursuant to an Agreement of Lease dated as of

4

January 1, 2017, as amended pursuant to an Amendment to Agreement of Lease dated as of December 31, 2021, (the "Operating Lease") with Debtor TSJV.

11. In the hospitality industry, a license or franchise agreement allows the owner of a hotel to operate a hotel under a hotel brand. The hotel brand drives traffic to the hotel through its reservation system, advertising, and reputation. A hotel owner looks to partner with the hotel brand that through its infrastructure and resources can best attract the clientele the hotel owner needs to operate profitably. For this reason, the license or franchise agreement is critical to hotel operations, and the reputation and infrastructure that the brand offers are key factors in the success of a hotel.

12. Under the terms of the License Agreement, in exchange for the payment of monthly fees, Holiday Hospitality grants CPTS a non-exclusive license permitting use of a system designed to identify Crowne Plaza hotels to the consuming public and reflect the standards associated with various Crowne Plaza trade and service marks, including rights to domain names and other identifications or elements used in electronic commerce, access to a reservation service, distribution of advertising, publicity and other marketing programs and materials, the furnishing of training programs and materials, confidential or proprietary information standards, specifications and policies for construction, furnishing, operation, appearance and service of the Hotel, and programs for inspecting the Hotel, measuring and assessing service, quality and consumer opinion, as well as certain intellectual property rights.

13. The License Agreement contains a variety of ongoing obligations for both parties during its term. For example, IHG is required to provide training services, *see* § 4(A), afford access to reservation services, *see* § 4(B), make available consultation and advice, *see* § 4(C), maintain high standards of quality, cleanliness, appearance, and service at all hotels using the

Crowne Plaza name, *see* § 4(D), and maintain a manual of hotel operations, *see* § 4(E). Meanwhile, CPTS is obligated to carry out and adhere to numerous operational requirements, *see* § 3(A), and pay monthly fees, *see* § 3(B).

14. The initial term of the License Agreement is scheduled to expire on March 31, 2027; IHG, however, has the option to renew the License Agreement until November 16, 2036. A true and accurate copy of the License Agreement is attached hereto as **Exhibit B**.

    C.    *Financial Difficulties Caused by the License Agreement*

15. The Debtors have been facing significant distress and financial hardship for several years, even prior to the Pandemic, due to unfavorable contracts which hamstrung the Hotel and prevented the Debtors from generating the revenue expected of a Hotel of its size, category and location. The License Agreement is the primary source of this distress. As noted above, certain of the Debtors have raised this issue with Holiday Hospitality, including through litigation.

16. In 2016, CPTS filed a lawsuit against Holiday Hospitality and IHG alleging that Holiday failed to fulfill its obligations under the License Agreement, harming CPTS's business. Among other allegations, CPTS asserted that Holiday Hospitality had failed to properly market the Crowne Plaza brand, had an antiquated reservations system, and had underperformed on key industry metrics. Specifically, CPTS believes that Holiday Hospitality failed to fulfill its obligations under the License Agreement to "market Crowne Plaza branded hotels as upscale hotels so as to promote, protect and enhance the public image and reputation of the Crowne Plaza name." As a result, for example, the average daily occupancy rate at the Hotel was less than other similarly-classified branded hotels, which clearly had a negative impact on the Debtors' revenues. Additionally, during this time, the Crowne Plaza brand materially underperformed its upscale peers in certain key industry metrics, and third-party rankings demonstrated that the brand

6

underperformed across the properties which with it was associated. Specifically, the Crowne Plaza brand achieved lower occupancy and lower average room rates that the upscale segment average, and also lagged behind other hotels in per key transaction price, average daily rate, and revenue per available room.

17. During the pendency of this litigation, in April 2018, Debtors TSJV and CPTS refinanced the Hotel in an effort to manage the Hotel's debts. The Debtors consolidated and replaced its previous debt with the current mortgage loan debt structure.

18. Holiday Hospitality moved to dismiss CPTS's complaint. On May 1, 2018, however, the Supreme Court of the State of New York denied Holiday Hospitality's motion. The court did, however, grant Holiday Hospitality a preliminary injunction preventing CPTS from terminating the License Agreement during the pendency of the litigation. *See Holiday Hospitality Franchising LLC v. CPTS Hotel Lessee LLC*, Index No. 653096/2016 (N.Y. Sup. May 1, 2018). This decision was upheld upon appeal to the First Department by a decision and order entered April 8, 2019. The lawsuit is ongoing. The Crowne Plaza brand thus remained in place until the onset of the Pandemic.

### D.     *The Parties' Business Relationship Further Deteriorates*

19. The strain in the parties' relationship continued, including on key issues like addressing health and safety concerns related to the Pandemic. In May 2020, Debtor CPTS sent a notice to Holiday Hospitality stating that the Pandemic had adversely affected operations of the Hotel and made performance under the License Agreement impossible. Due to virtually non-existent demand for hotel space in Times Square caused by the Pandemic, in an effort to attempt to preserve value, CPTS noted it was necessary to immediately effectuate a process to shut down the Hotel. Holiday Hospitality responded via letter that, while Holiday Hospitality did not concede

7

that Debtor CPTS had the right to unilaterally shutdown the Hotel, Holiday Hospitality would nevertheless consent to a temporary closure of the Hotel until June 10, 2020, subject to certain terms and conditions outlined in such letter (the "May 2020 Holiday Letter").

20. In a subsequent letter to CPTS in July 2020, Holiday Hospitality consented to an extension of such temporary closure of the Hotel through August 31, 2020, subject to the same terms and conditions. In August 2020, Debtor CPTS notified Holiday Hospitality that (i) it was not bound by any of the terms and conditions outlined by Holiday Hospitality in the May 2020 Holiday Letter and (ii) it had defaulted under the Mortgage Loan and the Mezzanine Loan, each as defined and described in the First Day Declaration, and therefore further decisions with respect to the License Agreement would require the input of the Debtors' lenders.

21. In a response letter sent in August 2020, Holiday Hospitality reiterated its position that (i) it had the right to impose such additional terms and conditions on CPTS, (ii) Holiday Hospitality's consent to the continued closure of the Hotel was subject to such terms and conditions, and (iii) CPTS's performance under the License Agreement was not excused.

22. The Crowne Plaza brand has shown continued weakness, underperforming other IHG portfolio flags and peers in the industry. This is evident from information publicly disclosed by IHG.

### E. The Debtors' Pre-Petition Negotiations

23. As is more fully described in the First Day Declaration, on December 28, 2022, the Debtors entered into a restructuring support agreement (as may be amended, supplemented, or otherwise modified from time to time, the "RSA") by and among the Debtors, the Debtors' prepetition lender, 1605 Broadway LLC (the "Mortgage Lender"), Vornado Capital Partners, L.P. and Vornado Capital Partners Parallel, L.P. (collectively, "VNO"). Pursuant to the RSA, the

various parties thereto agreed to support the restructuring transactions that are set forth in the Plan. Among other things, the Mortgage Lender agreed to permit the Debtors to use cash collateral on a consensual basis and to provide post-petition financing (the "<u>DIP Facility</u>") to enable the Debtors to implement their restructuring process through confirmation of the Plan, including to commence a marketing process for the sale of all or substantially all of the Debtors' assets.

### G.    *The Debtors Proposed Process to Solicit Offers from Competing Hotel Brands*

24.    The Debtors concurrently filed the Bidding Procedures Motion seeking an order authorizing them to conduct an open and competitive marketing process to solicit a new hotel brand partner. The Debtors believe the process will result in a new franchise agreement with a leading hotel brand.

### RELIEF REQUESTED

25.    The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit C**, authorizing CPTS to reject the License Agreement effective as of the Petition Date.

### BASIS FOR RELIEF

**I.    Rejection of the License Agreement is a Sound Exercise of the Debtors' Business Judgment and Should be Authorized**

**A.    The License Agreement is an Executory Contract**

26.    Section 365(a) of the Bankruptcy Code provides that a debtor may, with court approval, assume or reject an executory contract or unexpired lease. 11 U.S.C. § 365(a). Allowing the assumption or rejection of executory contracts "permit[s] the trustee or debtor-in-possession to . . . 'abandon burdensome property.'" *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993). In the Second Circuit, an "executory contract" is defined as one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the

9

other." *U.S. Bank Tr. Nat'l Ass'n v. AMR Corp. (In re AMR Corp.)*, 730 F.3d 88, 106 (2d Cir. 2013).

27. As detailed above, the parties have material unperformed obligations under the License Agreement. The License Agreement is therefore an executory contract within the meaning of section 365(a) of the Bankruptcy Code. *See, e.g.*, *In re SC SJ Holdings LLC*, Case No. 21-10549 (JTD), Dkt. No. 152 (Bankr. Del. Apr. 5, 2021) (finding that hotel management agreement and owner agreements were executory in nature); *In re Prime Motor Inns*, 124 B.R. 378, 379 (Bankr. S.D. Fla. 1991) (concluding that a hotel management agreement is executory in nature).

### B.    Applicable Standard for Rejecting – Business Judgment – Is Satisfied.

28. Bankruptcy courts look to the "business judgment" standard to determine whether the rejection of an unexpired lease should be authorized. *See In re Old Carco LLC*, 470 B.R. 688, 703 (S.D.N.Y. 2012) (explaining that the business judgment standard "applies when a Bankruptcy Court approves a debtor's assumption or rejection of a contract"); *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (collecting cases); *In re Delta Airlines, Inc.*, 359 B.R. 468, 476 (Bankr. S.D.N.Y. 2006) ("By case law, the standard for deciding a motion to reject an executory contract under Section 365(a) is the business judgment rule."). Under this standard, courts must approve a debtor's business decision unless that decision is the product of bad faith, whim, or caprice. *See Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996).

29. In light of the business judgment standard, courts generally do not second-guess a debtor's decision to reject executory contracts. *See In re MF Global Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also In re Delta Airlines*, 359 B.R. at 476 (explaining that the business judgment rule "basically means that if [rejection] makes sense for the debtor in the

judgment of management, the motion to reject will be granted"); *In re Balco Equities Ltd., Inc.*, 323 B.R. 85, 98 (Bankr. S.D.N.Y. 2005) ("A court 'should defer to a debtor's decision that rejection of a contract would be advantageous unless the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.'" (quoting *In re Sundial Asphalt Co.*, 147 B.R. 72, 84 (Bankr. E.D.N.Y. 1992))).

30.     The Debtors have determined, in their reasonable business judgment, that rejection of the License Agreement is in the best interest of the Debtors' estates. As set forth in the Rejection Declaration, Holiday Hospitality and IHG have historically failed to fulfill their obligations under the License Agreement and the Hotel brand's performance has fallen materially below market with respect to key industry metrics. *See* Rejection Dec. ¶¶ 6, 9. The Crowne Plaza brand has weakened considerably since the License Agreement was executed and investors have little interest in developing new hotels associated with the Crowne Plaza brand. *Id.* ¶ 8. Rejection of the License Agreement thus serves several purposes for the Debtors. Rejection frees the Debtors of a burdensome agreement which has historically constrained the Hotel's performance with an adversarial contract counterparty.. *Id.* ¶¶ 6-7. Rejection also allows the Debtors to signal to the marketplace that they are earnestly marketing the Franchise Right so that they can rebrand to facilitate future growth. *Id.* ¶ 12. Such rebranding of the Hotel is expected to maximize its value. *Id.* ¶¶ 10-11. Conversely, continuing to operate under the License Agreement would unnecessarily burden the Debtors and their estates with expense and further acrimony and could prospectively interfere with the Debtors' sale timeline and goals. *Id.* ¶¶ 7, 13.

31.     For all of these reasons, rejection of the License Agreement constitutes a proper exercise of the CPTS's business judgment.

II.     **Rejection as of the Petition Date is Appropriate**

11

32. The Court should authorize rejection of the License Agreement retrospective to the Petition Date because CPTS stated unequivocally its intention to reject the License Agreement by filing the Motion immediately after the Debtors filed the Chapter 11 Cases. Courts in this District and elsewhere recognize that, pursuant to sections 365(a) and 105(a) of the Bankruptcy Code, retroactive rejection is appropriate where the balance of the equities favors such relief. *See, e.g.*, *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 U.S. Dist. LEXIS 22052, at *3 (S.D.N.Y. Nov. 15, 2002) ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); *In re Jamesway Corp.*, 179 B.R. 33, 38 (S.D.N.Y.1995) ("[A] court can, where appropriate, approve rejection retroactively."); *SCS Co. v. Peter J. Schmitt Co.*, No. 94-125-RRM, 1995 U.S. Dist. LEXIS 22163, at *5 (D. Del. May 15, 1995) (a bankruptcy court has authority to select a retroactive date for the effective date of a lease's rejection); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case).

33. The balance of equities here favors the relief requested by the Debtors. Without a retroactive date of rejection, IHG could assert additional administrative expenses under the License Agreement after the Petition Date. Maintaining the License Agreement would unnecessarily burden the Debtors and their estates, and the agreement is not necessary for, and in fact will interfere with, the Debtors' restructuring plans. Thus, the Debtors will begin to realize savings immediately upon rejection of the License Agreement, preserving significant value for the Debtors' estates.

34. For these reasons, the Debtors respectfully submit that it is fair and equitable for the Court to order that the License Agreement be rejected retroactively as of the Petition Date and

have determined, in their reasonable business judgment, that such rejection would benefit the estates.

III. **IHG Claims Bar Date**

35. IHG may seek to assert rejection damages claims under section 502 of the Bankruptcy Code or other claims in connection with the License Agreement and must do so in accordance with any claim bar date set by the Court. The Debtors will give notice of such bar date to IHG, along with any and all other similarly-situated creditors, at a later date.

IV. **Request for Immediate Relief & Waiver of Stay**

36. Pursuant to Bankruptcy Rule 6004(h), CPTS seeks a waiver of any stay of the effectiveness of an order granting this Motion, to the extent that it applies to the relief requested in this motion. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The relief requested herein is essential to avoid the potential accrual of unnecessary administrative expenses. Accordingly, CPTS submits that, to the extent that Bankruptcy Rule 6004(h) applies, ample cause exists to justify a waiver of the fourteen-day stay.

## **RESERVATION OF RIGHTS**

37. Nothing herein is intended or shall be construed to: (a) constitute an admission as to the validity, amount or priority of any claim or lien by IHG against the Debtors or a promise or requirement to pay any claim; (b) constitute a waiver of the Debtors' rights to dispute any claim by IHG including, but not limited to, an administrative expense claim, or assert any defenses or counterclaims to any such claim; (c) constitute a waiver or limitation of any claim, cause of action, right or defense of the Debtors against IHG; (d) prejudice the Debtors' rights under the License Agreement or otherwise; (e) represent a concession or evidence that the License Agreement has

13

not expired, been terminated, or is otherwise currently not in full force and effect, or (f) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

## NOTICE

38. The Debtors will provide notice of this Motion to: (i) the United States Trustee for Region 2, Attn: Andrea B. Schwartz, Esq.; (ii) the holders of the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) the United States Attorney's Office for the Southern District of New York; (iv) counsel to the Prepetition Secured Lender and DIP Lender, Cleary Gottlieb Steen & Hamilton LLP; (v) counsel to IHG; and (vi) and any party that has requested notice pursuant to Bankruptcy Rule 2002 . The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

39. No previous request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

40. WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form as the Proposed Order attached hereto, granting the relief requested in this Motion along with such other and further relief as may be just and proper.

Dated: December 28, 2022　　　　　　　　Respectfully submitted,
　　　　New York, NY

　　　　　　　　　　　　　　　　　　　　*/s/ John R. Ashmead*
　　　　　　　　　　　　　　　　　　　　John R. Ashmead, Esq.
　　　　　　　　　　　　　　　　　　　　Robert J. Gayda, Esq.
　　　　　　　　　　　　　　　　　　　　Catherine V. LoTempio, Esq.
　　　　　　　　　　　　　　　　　　　　Andrew J. Matott, Esq.
　　　　　　　　　　　　　　　　　　　　**SEWARD & KISSEL LLP**
　　　　　　　　　　　　　　　　　　　　One Battery Park Plaza
　　　　　　　　　　　　　　　　　　　　New York, New York 10004
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 574-1200
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 450-8421
　　　　　　　　　　　　　　　　　　　　Email: ashmead@sewkis.com
　　　　　　　　　　　　　　　　　　　　　　　　gayda@sewkis.com
　　　　　　　　　　　　　　　　　　　　　　　　lotempio@sewkis.com
　　　　　　　　　　　　　　　　　　　　　　　　matott@sewkis.com

　　　　　　　　　　　　　　　　　　　　*Proposed Counsel to the Debtors*
　　　　　　　　　　　　　　　　　　　　*and Debtors in Possession*