**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | <u>FOR PUBLICATION</u> |
| | Chapter 11 |
| TIMES SQUARE JV LLC, *et al.*,[1] | Case No. 22-11715 (JPM) |
| | (Jointly Administered) |
| Debtors. | |

**<u>MEMORANDUM OPINION GRANTING DEBTOR'S</u>**
**<u>MOTION TO REJECT EXECUTORY CONTRACT</u>**

***ATTORNEYS AND LAW FIRMS:***

Seward & Kissel, LLP
*Counsel to the above-captioned Debtors*
One Battery Part Plaza
New York, NY 10006
(212) 574-1200
By: John R. Ashmead, Esq.
    Thomas Ross Hooper, Esq.
    Andrew J. Matott, Esq.

Kasowitz Benson Torres LLP
*Counsel to Holiday Hospitality Franchising, LLC*
1633 Broadway
New York, NY 10019
(212) 506-1700
By: Matthew B. Stein, Esq.
    Paul M. O'Connor III, Esq.

DLA Piper LLP (US)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Times Square JV LLC (6123), CPTS Hotel Lessee LLC (6401), 1601 Broadway Holding LLC (3359), and 1601 Broadway Owner LLC (6463). The mailing address for the Debtors is 15 East Putnam Avenue, Suite 406, Greenwich CT 06830.

*Proposed Counsel to the Official Committee of Unsecured Creditors*
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
By: Dennis C. O'Donnell, Esq.
     Rachel Ehrlich Albanese, Esq.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the above-captioned Debtors' (collectively, the "**Debtors**") *Motion for Entry of an Order Authorizing Rejection of the License Agreement with IHG* (Docket No. 18) (the "**Motion**"), which is supported by the *Declaration of Richard J. Shinder in Support of Debtors' Motion for Entry of an Order Authorizing Rejection of the License Agreement with IHG* (Motion ex. A) (the "**Rejection Declaration**"). The Motion requests that the Court authorize Debtor CPTS Hotel Lessee LLC ("**CPTS**") to reject that certain Crowne Plaza License Agreement (as amended, supplemented, or otherwise modified from time to time, the "**License Agreement**"), dated as of July 1, 2012, between CPTS and Holiday Hospitality Franchising, LLC ("**HHF**") under Section 365 of the Bankruptcy Code ("**Section 365**"), effective as of the Petition Date (as defined below). HHF objects to the Motion. (*See Holiday Hospitality Franchising, LLC's Preliminary Objection to Debtors' Motion for Entry of an Order Authorizing Rejection of the License Agreement with IHG [D.I. 18]*, Docket No. 44 (the "**HHF Objection**").) The HHF Objection is supported by: (i) the *Declaration of Paul M. O'Connor III Support of Holiday Hospitality Franchising, LLC's Preliminary Objection to Debtors' Motion for Entry of an Order Authorizing Rejection of the License Agreement with IHG [D.I. 18]*, Docket No. 45 (the "**O'Connor Declaration**"), (ii) the *Declaration of Colin MacDonald in Support of Holiday Hospitality Franchising LLC's Preliminary Objection to Debtors' Motion for Entry of an Order Authorizing Rejection of the License Agreement with IHG [D.I. 18]*, Docket No. 46 (the

2

"**MacDonald Declaration**") and (iii) the *Declaration of Chris Bagnato in Support of Holiday Hospitality Franchising, LLC's Preliminary Objection to Debtors' Motion for Entry of an Order Authorizing Rejection of the License Agreement with IHG [D.I. 18]*, Docket No. 122 (the "**Bagnato Declaration**"). Debtors filed a reply to the HHF Objection. (*See Debtors' Reply to Holiday Hospitality Franchising, LLC's Objection to Debtors' Motion for Entry of an Order Authorizing Rejection of the License Agreement With IHG*, Docket No. 126 ("**Debtors' Reply**").) The Official Committee of Unsecured Creditors (the "**Committee**") does not object to the Motion, although it expressed some concerns about possible consequences of rejecting the License Agreement. (*See Statement of the Official Committee of Unsecured Creditors Regarding Debtors' Motion for Entry of an Order Authorizing Rejection of the License Agreement with IHG*, Docket No. 130 (the "**Committee Statement**").) At the request of Debtors and HHF, the Court held a telephonic conference regarding discovery in connection with the Motion on January 10, 2023. The Court held a hearing on the Motion on January 24, 2023 (the "**Hearing**"). The Court has reviewed (i) the Motion; (ii) the Rejection Declaration; (iii) the HHF Objection; (iv) the O'Connor Declaration; (v) the MacDonald Declaration; (vi) the Bagnato Declaration; (vii) the Debtors' Reply; (viii) the Committee Statement; (ix) the arguments of counsel from the Hearing; and (x) all other relevant material in the record. As set forth below, the Court finds that the License Agreement is an executory contract and that the Debtors properly exercised their business judgment in deciding to reject the License Agreement. Accordingly, the Court will **GRANT** the Motion.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## II.  BACKGROUND

Debtors own a mixed-use building in Times Square. (*Declaration of Richard J. Shinder in Support of Chapter 11 Petitions and First Day Pleadings* ¶ 8, Docket No. 5 (the "**First Day Declaration**").) The building includes hotel space, office space, retail space, billboards and a parking garage. (*Id.*) The hotel portion is currently branded as the "Crowne Plaza Times Square Manhattan Hotel" under the License Agreement with HHF. (*Id.* ¶ 9.) Both parties have ongoing obligations under the License Agreement: HHF must, among other things, provide Debtors with training services, afford access to reservation services, make available to Debtors consultation and advice, maintain standards of quality at other Crowne Plaza-branded hotels, and maintain a manual of hotel operations; Debtors must pay monthly fees and carry out and adhere to numerous operational requirements. (Motion ¶ 13.) The License Agreement is scheduled to expire in 2027, with HHF having the option to renew until 2036. (*Id.* ¶ 14.)

The relationship between Debtors and HHF has been strained. (Rejection Declaration ¶ 7.) Debtors believe that the License Agreement is unfavorable to them and that it is a primary source of their financial distress. (Motion ¶ 15; First Day Declaration ¶ 16; Rejection Declaration ¶ 8.) HHF contests this assertion and argues that the License Agreement has been, and continues to be, beneficial to Debtors. (HHF Objection ¶¶ 24-26; Bagnato Declaration ¶¶ 24-32; MacDonald Declaration ¶¶ 6-10.) CPTS and HHF entered into the License Agreement in 2012 to replace an earlier hotel management agreement between their respective affiliates. (O'Connor Declaration ¶ 6.) In 2016, CPTS came to believe that HHF was not complying with its obligations under the License Agreement and sent a "Notice of Default" demanding that HHF cure certain alleged breaches. (*Id.* ¶ 7; *see id.* ex. 5.) One month later, CPTS sent a "Notice of Termination" that purported to terminate the License Agreement in accordance with its terms. (*Id.* ¶ 7; *see id.* ex. 6.) On that same day, CPTS also initiated litigation (the "**CPTS Action**") in

New York State Supreme Court (the "**State Court**") that asserted claims for breach of contract and sought a declaratory judgment that the License Agreement was terminated and unenforceable. (*Id.* ¶ 7.) In response, HHF filed a separate action (the "**HHF Action**," and, together with the CPTS Action, the "**New York Actions**") in the State Court seeking a declaratory judgment that the License Agreement was not terminated, an injunction preventing CPTS from terminating the License Agreement, and monetary damages in the event that CPTS had successfully terminated the License Agreement. (*Id.* ¶ 8.) In 2018, the State Court, considering the New York Actions together, issued a decision (*see id.* ex. 7 (the "**State Court Opinion**")) denying motions to dismiss with respect to some claims, granting with respect to others, and issuing a preliminary injunction (the "**Preliminary Injunction**") that barred CPTS from terminating the License Agreement until the New York Actions were resolved. (*Id.* ¶ 9.) The State Court granted the Preliminary Injunction because it found that an injunction was "necessary to preserve the status quo" as the New York Actions proceeded. (State Court Opinion 12.) The Preliminary Injunction was upheld on appeal to the New York Supreme Court, Appellate Division. (O'Connor Declaration ¶ 10; *see also id.* ex. 8.) The New York Actions have not yet proceeded to trial and are currently stayed by this bankruptcy case. (Hearing Tr. 15, Docket No. 169.) The Preliminary Injunction remains in place. (*Id.* at 29.)

Debtors filed for chapter 11 bankruptcy on December 28, 2022 (the "**Petition Date**"). On the Petition Date, Debtors filed a proposed plan of reorganization that features a "toggle" structure whereby Debtors will pursue an asset sale to repay creditors and, if such a sale is not consummated, certain creditors' debt will be converted to equity. (First Day Declaration ¶ 53; *see Debtors' Plan of Reorganization under Chapter 11 of the Bankruptcy Code*, Docket No. 21.) As part of the asset sale prong, Debtors want to be able to market their business without the

5

License Agreement, so that the buyer has the option to partner with a franchisor of the buyer's choosing. (Rejection Declaration ¶ 12.) Debtors believe that auctioning their assets without the License Agreement will result in higher bids. (Rejection Declaration ¶¶ 11-13.) Accordingly, on the Petition Date, Debtors filed the Motion.

The Motion seeks: (i) to authorize Debtors to reject the License Agreement under Section 365 and (ii) to authorize the rejection of the License Agreement retroactive to the Petition Date. HHF objected to the Motion, arguing (i) that the License Agreement is not executory and so is not rejectable under Section 365 and (ii) that rejecting the License Agreement is not a proper exercise of the Debtors' business judgment. Prior to the Hearing, HHF agreed to withdraw their objection challenging Debtors' business judgment. (Hearing Tr. 7-8.) Debtors and HHF also agreed that, notwithstanding rejection, both parties would continue to perform under the License Agreement until a plan is confirmed, CPTS' assets are sold, or Debtors give notice of termination.[2] (Hearing Tr. 8.) In light of this understanding, the Court considers the Debtors' request to authorize rejection of the License Agreement retroactive to the Petition Date to be moot.[3] The only opposition still before the Court is HHF's objection that the License Agreement is not executory.

### III.    LEGAL STANDARD

---

[2] The parties agreed to submit a revised order reflecting this agreement. (Hearing Tr. 8.)
[3] To the extent this issue is not moot, the Court finds that the balance of equities does not favor retroactive rejection. The Debtors have continued to use and benefit from the License Agreement post-petition, in exchange for which they would generally be expected to pay. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services . . . .") *cf. BP Energy Co. v. Bethlehem Steel Corp.*, No. 02 CIV. 6419 (NRB), 2002 WL 31548723, at *6 (S.D.N.Y. Nov. 15, 2002) (granting retroactive rejection where debtor told the counterparty in advance to stop making deliveries).

Section 365 provides that, with exceptions not relevant here, the debtor-in-possession,[4] "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C. § 356. "The purpose behind allowing the assumption or rejection of executory contracts is to permit the . . . debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d. Cir. 1993) (internal quotation marks omitted). "The plain language of the [Bankruptcy] Code permits a chapter 11 trustee . . . to assume or reject the executory contract at any time before the confirmation of a plan." *In re Penn Traffic Co.*, 524 F.3d 373, 378-79 (2d Cir. 2008) (internal quotation marks omitted).

A contract must be "executory" to be rejected under Section 365. *In re Avianca Holdings S.A.*, 618 B.R. 684, 696 (Bankr. S.D.N.Y. 2020) (stating that where a contract is non-executory, it is "neither assumable nor rejectable.") "Executory contract" is not a term defined in the Bankruptcy Code. *See Penn Traffic*, 524 F.3d at 379. The Second Circuit has characterized an executory contract as one "on which performance remains due to some extent on both sides . . . ." *Id.* at 379 (quoting *In re Ionosphere Clubs, Inc.*, 65 F.3d 992 (2d Cir. 1996)). The standard test of "executoriness" is the "Countryman test," under which a contract is executory if "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Id.* (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)); *see also Avianca Holdings*, 618 B.R. at 696 (stating "[m]ost courts have adopted Professor Countryman's definition of an executory contract" and applying Countryman test)). "The Second Circuit ordinarily measures whether a contract is

---

[4] Per Section 1107 of the Bankruptcy Code, a debtor-in-possession in a chapter 11 case generally has the same rights as a trustee (including the right to reject or assume executory contracts). *See* 11 U.S.C. § 1107.

7

executory on the petition date." *In re Worldcom, Inc.*, No. 02-13533, 2010 WL 2465362, at *4, 2010 Bankr. LEXIS 1917, at *13 (Bankr. S.D.N.Y. June 11, 2010) (citing *Penn Traffic*, 524 F.3d at 381).

Franchise agreements are generally considered executory. *See, e.g.*, *In re Adelphia Communications Corp.*, 359 B.R. 65, 71 (Bankr. S.D.N.Y. 2007) ("Both sides agree that the franchise agreements in question are executory contracts."); *In re FPSDA I, LLC*, 450 B.R. 392, 394 (Bankr. E.D.N.Y. 2011) ("It is undisputed that these franchise agreements are executory contracts"); *In re Wills Motors, Inc.*, 133 B.R. 297, 301-02 (Bankr. S.D.N.Y. 1991) ("[W]hen the debtor filed its Chapter 11 petition . . . , it continued to operate as a franchisee . . . and retained a viable interest in a [franchise agreement] which qualified as an executory contract . . . ."); *see also* 6 Norton Bankr. L. & Prac. 3d § 121:2 (Jan. 2023 update) (stating "[i]t is well established that a franchise agreement is an 'executory contract' within the meaning of [Section] 365" and collecting cases).

"At heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate." *Orion Pictures*, 4 F.3d at 1098. Courts use a "business judgment" standard when evaluating whether to permit a debtor to assumer or reject a contract. *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009). "This standard . . . presupposes that the estate will assume a contract only where doing so will be to its economic advantage and will reject contracts whose performance would benefit the counterparty at the expense of the estate." *Penn Traffic*, 524 F.3d at 383. "Generally, absent a showing of bad faith, or an abuse of business discretion, the debtor's business judgment will not be altered." *Old Carco*, 406 B.R. at 188 (quoting *In re G Survivor Corp.*, 171 B.R. 755, 759

8

(Bankr. S.D.N.Y.1994)). "Courts routinely approve motions to assume . . . or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012). "The [debtor], in seeking to reject an executory contract, must support the motion with evidence—usually in the form of a declaration or affidavit—demonstrating that rejection of the contract falls within the proper exercise of the [debtor's] business judgment. That standard can be satisfied upon a showing that the contract will no longer be beneficial or necessary to the estates, that it has become burdensome to the estates, or that a prompt elimination of the attendant expenses will positively impact the [d]ebtors' ability to improve their financial condition." *Id.* "Courts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract . . . would benefit the debtor's estate." *Id.*

Rejecting a contract under Section 365 is considered a breach that is deemed to have occurred immediately before date the bankruptcy petition was filed. *See* 11 U.S.C. § 365(g); *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997) ("Rejection gives rise to a remedy for breach of contract in the non-debtor party. The claim is treated as a pre-petition claim, affording creditors their proper priority.").

## IV.    DISCUSSION

The Motion presents two issues for the Court to resolve: (i) whether the License Agreement is an executory contract; and (ii) whether the Debtors properly exercised their business judgment.

### A.  The License Agreement is an Executory Contract

The threshold (and only contested) issue is whether the License Agreement is an executory contract within the meaning of Section 365. If the License Agreement is not

9

executory, it cannot be rejected. *Avianca Holdings*, 618 B.R. at 696. In the Motion, Debtors argue that the License Agreement is an executory contract because the parties have material unperformed obligations. (Motion ¶ 27.)

HHF, however, argues that rejection is precluded by the Preliminary Injunction. Specifically, HHF argues that (i) the License Agreement is rendered non-executory by the Preliminary Injunction, (ii) allowing rejection would violate principals of comity and (iii) rejection would be contrary to the Rooker-Feldman doctrine. (HHF Objection ¶¶ 32-34; Hearing Tr. 33.) Each of HHF's arguments will be addressed in turn.

### 1. The Preliminary Injunction Does Not Render the License Agreement Non-Executory

HHF argues that the Preliminary Injunction renders the License Agreement non-executory because the Preliminary Injunction requires CPTS to continue performing under the License Agreement. (HHF Objection ¶ 32.) HHF contends that, where a court order requires a party to perform under a contract, performance becomes mandatory pursuant to the order, not the contract itself, making the contract non-executory. (*Id.*) HHF cites three cases to support this position: *In re Bennett Enterprises, Inc.*, 628 B.R. 481 (Bankr. D.N.J. 2021); *In re Brick House Properties*, 633 B.R. 410 (Bankr. D. Utah 2021); and *In re High Country Resorts*, 94 B.R. 193 (Bankr. D.N.M. 1988). Debtors argue that these cases cited by HHF are irrelevant because they involve final judgments and that the Preliminary Injunction does not render the License Agreement non-executory because the Preliminary Injunction was not a final adjudication on the merits. (Debtors' Reply ¶¶ 33-34.)

The Court agrees with Debtors that the Preliminary Injunction does not render the License Agreement non-executory. The cases cited by HHF are distinguishable because they all involve final orders, not preliminary injunctions. In *Bennett Enterprises*, the debtor sought to

10

reject a sales contract pursuant to which the debtor was obligated to transfer a state liquor license to the counterparty. *Bennett Enterprises*, 628 B.R. at 485-86. Prior to the bankruptcy, a New Jersey state court had entered an order for specific performance that required the debtor to transfer the license in accordance with its contract. *Id.* at 485. Noting that under New Jersey Court Rules "an order for specific performance has the effect of a final order . . even though other claims may still be pending before the court" and that the New Jersey state court had "fully adjudicated the issue of the transfer of the [l]iquor [l]icense on the merits," the bankruptcy court held that the contract at issue was no longer executory. *Id.* at 490-91. Similarly, in *Brick House*, the debtor sought to reject a contract pursuant to which it was obligated to sell certain real estate. *Brick House*, 633 B.R. at 414-15. A Texas state court had previously ruled against the debtor on a motion for summary judgment and had entered an order for specific performance that required the debtor to obtain a variance related to the contract. *Id.* at 416. Ultimately, the bankruptcy court held that the contract was no longer executory because the debtor's remaining performance was "no longer discretionary or executory, but was merely a ministerial act necessary to carry out the [s]tate [c]ourt's directive." *Id.* at 420. In *High Country Resorts*, the debtor sought to reject two contracts it entered to purchase condominiums. *High Country Resorts*, 94 B.R. at 193. The debtor had defaulted under the contracts and the seller sued for accelerated payments in New Mexico state court. *Id.* at 193-94. After a trial, the New Mexico state court issued written findings of fact and conclusions of law in favor of the sellers but had not yet entered the judgment when the debtor was involuntarily put into bankruptcy. *Id.* at 194. The bankruptcy court held that the findings and conclusions were "in substance [] a judgment for plaintiffs against the defendants," and thus the contracts were no longer executory. *Id.*

11

The underlying state court order in each of the cases cited by HHF was a final order, entered on the merits of the case. Here, the Preliminary Injunction is a temporary order intended to merely "preserve the status quo" until the case could be further (and fully) litigated. (State Court Opinion 12.) The Preliminary Injunction was granted because, without it, CPTS had "acknowledged it [would] terminate the [License Agreement], essentially changing the status quo and resolving the application for an injunction . . . ." (*Id.*) To properly resolve the New York Actions on a final basis, the State Court needed "the factfinder at a hearing or a trial" to determine "[w]hether [HHF] acted arbitrarily" (*id.*), which determination has not yet been made. The State Court also denied the motion to dismiss HHF's claim for injunctive relief because "facts are required to rebut a presumption [of irreparable harm] and, therefore, dismissal of the claim is premature *at this juncture* . . . ." (*Id.* (emphasis added).) Unlike with a final order, a preliminary injunction does not alter the parties' contractual rights. *See Wills Motors*, 133 B.R. at 301-02 (where a state court preliminary injunction prohibited franchisor from terminating franchise agreement, the debtor had "existing contractual rights under the [franchise agreement] . . . when it filed its Chapter 11 petition . . . , with the result that the debtor could employ 11 U.S.C. § 365 to assume . . . such contractual interest . . . ."); *cf. In re Baver,* No. 21-10806, 2021 WL 5815643, at *6, 2021 Bankr. LEXIS 3354, at *16 (S.D. Ohio Nov. 2, 2021) (where a court orders specific performance, "the parties no longer have future obligations under a contract, but instead have duties imposed by judicial comment").

As to HHF's related argument that the remaining obligations under the License Agreement are "ministerial" because the License Agreement requires CPTS to adhere to a hotel manual with little to no discretion (*see* Hearing Tr. 29-31), the Court is unpersuaded. The Court does not believe that only "ministerial" tasks remain under the License Agreement, which by its

12

terms could extend for another 4-13 years. (*See* Motion ¶ 14.) As set forth above, pursuant to the License Agreement, HHF must, among other thing, provide training services and access to a reservation system, offer consultation services, maintain the quality at other branded hotels and maintain a manual of hotel operations. (*Id.* at 13.) Debtors, on the other hand, must, *inter alia*, adhere to numerous operational requirements, pay monthly fees, maintain the cleanliness of the hotel, promote the hotel, and comply with confidentiality requirements. (*Id.* at 13; Hearing Tr. 24-25.) The outstanding obligations on both sides are sufficiently material for the License Agreement to be considered "executory." *See Avianca Holdings*, 618 B.R. at 696; *Penn Traffic*, 524 F.3d at 379. The Preliminary Injunction thus does not render the License Agreement non-executory.

### 2. Comity Does Not Prevent the Court from Authorizing Rejection

HHF also argues that allowing Debtors to reject the License Agreement would violate principals of comity because it would overrule a state court order. (HHF Objection ¶ 33.) Debtors argue that (i) rejecting the License Agreement would not actually be contrary to the Preliminary Injunction, because the Preliminary Injunction prohibits termination, not rejection, of the License Agreement and (ii) the Preliminary Injunction is preempted to the extent it prohibits Debtors' from exercising their rights under Section 365. (Debtors' Reply ¶¶ 36-39.)

"The comity doctrine preserves proper federal court respect for state court rulings: There is a strong public policy grounded in the interest of comity between federal and state courts and the notion of federalism, that federal courts should not unnecessarily interfere with state court proceedings." *Brick House*, 633 B.R. at 422 (quotation marks omitted). A bankruptcy court may voluntarily abstain from hearing a proceeding "in the interest of comity with State courts . . . ." 28 U.S.C. § 1334. "While bankruptcy courts have broad discretion to abstain under § 1334,

following the guidance of the Supreme Court, this circuit has recognized that abstention should only be exercised in narrow circumstances." *In re Bozel S.A.*, 434 B.R. 86, 102 (Bankr. S.D.N.Y. 2010).

The Court finds that authorizing rejection of the License Agreement under Section 365 does not violate the doctrine of comity. The New York Actions and this Motion are wholly different proceedings. In the New York Actions, CPTS was seeking a determination that the License Agreement was terminated pursuant to its terms. (O'Connor Declaration ¶ 7; *see id.* ex. 1.) In this proceeding, Debtors seek to reject the License Agreement under rights granted by the Bankruptcy Code. The relief sought is inherently distinct. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1662 (2019) ("A rejection does not terminate the contract."); *Lavigne*, 114 F.3d at 386-87 (rejection of a contract under Section 365 constitutes a breach, not a termination of the contract). Accordingly, allowing the Debtor to reject the contract under Section 365 does not interfere with the New York Actions and does not violate principals of comity.

### 3. Rooker—Feldman Does Not Apply

Finally, HHF argues that allowing Debtors to reject the License Agreement would violate the *Rooker-Feldman* doctrine. (Hearing Tr. 33.) The *Rooker-Feldman* doctrine is derived from two United States Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "Together, those cases stand for the proposition that lower federal courts lack subject matter jurisdiction to sit in appellate review of state court judgments." *In re Lindsay*, No. 20-10339-JLG, 2021 WL 278317, at *4, 2021 Bankr. LEXIS 187, at *11 (Bankr. S.D.N.Y. Jan. 27, 2021). *Rooker-Feldman* is a jurisdictional doctrine that bars "cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. The Second Circuit has identified four elements without which *Rooker-Feldman* does not apply:

    (i)    the federal court plaintiff must have lost in state court;

    (ii)    the federal plaintiff must complain of injuries caused by a state court judgment;

    (iii)    the plaintiff must invite district court review and rejection of that judgment; and

    (iv)    the state court judgment must have been rendered before the district court proceedings commented.

*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *see also Lindsay*, 2021 WL 278317, at *4, 2021 Bankr. LEXIS 187, at *11. In this case, the elements are not satisfied because Debtors did not "lose" in the New York Actions—no final judgment has been rendered. Again, the Preliminary Injunction is a temporary measure to maintain the status quo pending final resolution. (State Court Opinion 12.) Additionally, Debtors are not complaining about injury "caused" by the Preliminary Injunction, and this Court is neither reviewing nor rejecting the Preliminary Injunction. Therefore, *Rooker-Feldman* does not apply.

### B. CPTS Properly Exercised Business Judgment to Reject the License Agreement

To reject an executory contract, Debtors must demonstrate that such rejection is a proper exercise of its business judgment by showing that the rejection will benefit the bankruptcy estate. *MF Glob. Holdings Ltd.*, 466 B.R. at 242. In the Rejection Declaration, Debtors' President, Richard J. Shinder, sets forth several reasons for Debtors to reject the License Agreement,

15

including (i) perceived underperformance of the License Agreement (Rejection Declaration ¶ 8); (ii) anticipated increased future revenue without the License Agreement (*id.* ¶ 10); (iii) enabling "a more robust marketing and sale process" (*id.* ¶¶ 6, 12); and (iv) ending an acrimonious and adversarial relationship between the parties thereto (*id.* ¶ 7). As discussed above, HHF has withdrawn its objections to Debtors' exercise of their business judgment. The Court finds that, based on the record, Debtors have established that rejecting the License Agreement will benefit the estate. Additionally, there is no evidence that Debtors acted in bad faith or otherwise abused their discretion. The Court thus concludes that Debtors properly exercised their business judgment in rejecting the License Agreement.

## V.    CONCLUSION

Based on the forgoing analysis, the Court finds that (i) the License Agreement is an executory contract within the meaning of Section 365 and (ii) rejection of the License Agreement constitutes a proper exercise of Debtors' business judgment. Accordingly, the HHF Objection is **OVERRULED**, and the Motion is **GRANTED**. The parties shall submit a proposed order consistent with the rulings set forth herein.


Dated:    February 4, 2023
         New York, New York

                                        /S/ John P. Mastando III
                                        HONORABLE JOHN P. MASTANDO III
                                        UNITED STATES BANKRUPTCY JUDGE