**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Times Square JV LLC, *et al.*,[1] | Case No. 22-11715 (JPM) |
| | (Jointly Administered) |
| Debtors. | |

## ORDER (I) CONFIRMING DEBTORS' THIRD
## AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11
## OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") having:

a.      commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") on December 28, 2022 (the "***Petition Date***") in the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***");

b.      continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.      filed, on the Petition Date, the *Debtors' Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 21], as further amended, altered, modified, revised, or supplemented on January 30, 2023 [Dkt. No. 156], February 3, 2023 [Dkt. No. 173], on March 14, 2023, the *Debtors' Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [Dkt. No. 348] and on March 16, 2023, the *Debtors' Third Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [Dkt. No. 256] (the "***Plan***"), which is attached hereto as **Exhibit A**;

d.      filed, on the Petition Date, the *Disclosure Statement for the Debtors' Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 22] (as further amended, altered, modified, revised, or supplemented on January 24, 2023 [Dkt. No. 133], January 30, 2023 [Dkt. No. 159] and February 3, 2023 [Dkt. No. 174], the "***Disclosure Statement***");

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Times Square JV LLC (6123), CPTS Hotel Lessee LLC (6401), 1601 Broadway Holding LLC (3359), and 1601 Broadway Owner LLC (6463).  The mailing address for the Debtors is 15 East Putnam Avenue, Suite 406, Greenwich, CT 06830.

e.    filed, on the Petition Date, *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Dkt. No. 23] (the "***Disclosure Statement Motion***") which included the Debtor's solicitation and voting procedures (the "***Solicitation and Voting Procedures***") and instructions for Holders of Claims to access the ballots (the "***Ballots***") to vote to accept or reject the Plan (the "***Ballot Instructions***");

f.    filed, on the Petition Date, the *Notice of Debtors Motion for Entry of an Order Approving (I) The Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms and Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Dkt. No. 20] setting forth the date and time set for the hearing to consider the approval of the Debtors' Disclosure Statement (the "***Disclosure Statement Hearing***") and the deadlines for filing objections to the Disclosure Statement (the "***Disclosure Statement Hearing Notice***") on Stretto's public website for these Chapter 11 Cases;

g.    filed, on the Petition Date, the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors Assets, (II) Scheduling Certain Dates Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment, and (V) Granting Related Relief* [Dkt. No. 14] (the "***Bidding Procedures Motion***");

h.    filed, on the Petition Date, the *Notice of Hearing / Notice of Hearing to Consider Debtors Motions for Entry of Orders Approving (I) Bidding Procedures Motion, (II) Bar Date Application, and (III) Rejection Motion* [Dkt. No. 19] setting forth the date and time set for the hearing to consider the approval of the Debtors' Bidding Procedures Motion (the "***Bidding Procedures Hearing***") and the deadlines for filing objections to the Bidding Procedures Motion (the "***Bidding Procedures Hearing Notice***") on Stretto's public website for these Chapter 11 Cases;

i.    filed, on the Petition Date, the *Debtors' Motion to Approve / Debtors Motion for Entry of an Order (I) Scheduling Hearing and Objection Deadlines with Respect to Approval of the Debtors Disclosure Statement and Confirmation of the Debtors Plan And (II) Granting Related Relief* [Dkt. No. 14] (the "***Scheduling Motion***");

j.    caused, on January 13, 2023, the *Notice of Deadlines for Filing Proof of Claim* (such deadlines, the "***Bar Dates***" and such notice, the "***Bar Date Notice***") to be distributed through Stretto, as evidenced by the *Certificate of Service* [Dkt. No. 144] (the "***Bar Date Notice Affidavit***"); and (i) on January 16, 2023, caused the publication of the Bar Date Notice in *The New York Times*, as evidenced by the *Notice of Certification of Publication in the New York Times re: Notice of Bar Dates for Filing Proofs of Claim* [Dkt. No. 124] (the "***New York Times Publication Notice Affidavit***" together, with the Bar Date Notice Affidavit, the "***Bar Date Affidavits***");

2

k.      on February 8, 2023, caused the publication of notice of the Confirmation Hearing in *The New York Times*, as evidenced by the *Notice of Certification of Publication in the New York Times re: Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines* [Dkt. No. 179] (the "***Confirmation Hearing Publication Notice***")

l.      filed, on March 2, 2023, the *Notice of Filing Plan Supplement* [Dkt. No. 214] (the "***Initial Plan Supplement***");

m.      filed, on March 3, 2023, the *Notice of Filing First Amended Plan Supplement* [Dkt. No. 217] (the "***First Amended Plan Supplement***" and, together with the Initial Plan Supplement, the "***Plan Supplement***");

n.      filed, on March 7, 2023, the notice, setting forth the date and time set for the confirmation hearing to consider the Confirmation of the Plan (the "***Confirmation Hearing***"), and the deadlines for filing objections to the Plan (the "***Confirmation Hearing Notice***") on Stretto's public website for these Chapter 11 Cases [Dkt. No. 228];

o.      filed, on February 28 2023, the *Notice of Cancellation of Auction* [Dkt. No. 208] (the "***Notice of Auction Cancellation***");

p.      filed, on March 14, 2023, the *Debtors' Memorandum of Law in Support of Confirmation of Debtors' Second Amended Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 243] (the "***Confirmation Brief***");

q.      filed, on March 14, 2023, the *Declaration of Richard J. Shinder in Support of Confirmation of the Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 245] (the "***Confirmation Declaration***"); and

r.      filed, on March 14, 2023, the *Certification of Stretto Regarding Tabulation of Votes in Connection with the Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 244] (the "***Voting Report***").

The Bankruptcy Court having:

a.      entered, on January 11, 2023, the *Order Establishing Deadline for Filing Proofs of Claim Filing and Approving the Form and Manner of Notice Thereof* [Dkt. No. 80] (the "***Bar Date Order***");

b.      entered, on January 19, 2023, the *Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors Assets, (II) Scheduling Certain Dates Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment, and (V) Approving The Sale And Granting Related Relief* [Dkt. No. 110] (the "***Bidding Procedures Order***");

c.      entered, on February 3, 2023, the *Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms and Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Dkt. No. 172] (the "***Disclosure Statement Order***"), which, among other things, approved the Debtors' solicitation and tabulation procedures (the "***Solicitation and Tabulation Procedures***");

d.      set March 9, 2023, at 4:00 p.m. as the deadline by which objections to the Plan must be filed (the "***Confirmation Objection Deadline***");

e.      set March 9, 2023, at 4:00 p.m. as the deadline by which Ballots must be received by Stretto Inc. (the "***Voting Agent***" and such deadline, the "***Voting Deadline***");

f.      set March 14, 2023, as the date by which the Debtors must file a reply to objections to the Plan;

g.      set March 16, 2023, at 9:30 a.m. as the date and time for the Confirmation Hearing pursuant to Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "***Local Rules***"), subject to adjournment;

h.      reviewed the Plan, the Confirmation Brief, the Plan Supplement, the Voting Report, the Confirmation Declaration, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including any and all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

i.      held the Confirmation Hearing on March 16, 2023;

j.      heard the statements, arguments, and objections, if any, made by counsel in respect of confirmation of the Plan;

k.      considered all oral representations, testimony, documents, filings, and other evidence regarding confirmation of the Plan;

l.      taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases; and

m.      overruled any and all objections[2] to the Plan, confirmation, and all statements and reservations of right not consensually resolved or withdrawn unless otherwise indicated herein.

---

[2]    The only objections to confirmation of the Plan filed were the *Objection to Confirmation of Amended Plan* filed by Clear Channel Spectacolor, LLC [Dkt. No. 232], the *Objection to Confirmation of Amended Plan (Limited)*

**NOW**, **THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of confirmation of the Plan and all evidence proffered, admitted, or adduced by counsel at the Confirmation Hearing and the entire record of these Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact and Conclusions of Law, and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.     Findings and Conclusions.**

1.     The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, or vice versa, they are adopted as such.

**B.     Jurisdiction, Venue, and Core Proceeding.**

2.     The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to section 1334 of title 28 of the United States Code.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code

---

filed by 1601 Enterprises Inc. [Dkt. No. 233], and the *United States Trustee's Objection to Confirmation of Debtors' Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [Dkt. No. 240].

and should be confirmed.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code.

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of These Chapter 11 Cases.**

4.      On the Petition Date, each Debtor commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By prior order of the Bankruptcy Court, these Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Dkt. No. 31].  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.  On January 10, 2023, the U.S. Trustee appointed the Official Committee of Unsecured Creditors [Dkt. No. 74] (the "***Committee***") in these Chapter 11 Cases.

**E.      Pre- and Post-Petition Marketing and Good Faith.**

5.      In the events leading up to and during the course of these Chapter 11 Cases, the Debtors explored a variety of alternatives with the goal of maximizing the value of the Debtors' Estates.  The Debtors' officer, director, financial advisors, attorneys, and other professionals that were involved with the formulation, negotiation, documentation, and approval of the filing of these Chapter 11 Cases and the Plan, and who pursued, analyzed, negotiated, and documented the transactions contemplated thereunder, acted in good faith and made informed decisions in connection therewith.  The Secured Lender and the DIP Lender, in such capacities, and each of

their respective partners, officers, directors, employees, advisors and professionals acted in good faith in negotiating, formulating and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions and transfers contemplated thereby.

**F.    Judicial Notice.**

6.    The Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

**G.    Notice.**

7.    Due, timely, proper, and adequate notice of the Plan, the Bar Dates, and the Confirmation Hearing, together with the deadlines for voting to accept or reject the Plan as well as objecting to the Plan, has been provided substantially in accordance with the Disclosure Statement Order and the Bar Date Order, as set forth in the Voting Report and the Bar Date Notice Affidavit, respectively.

8.    Such notice was appropriate and satisfactory based upon the facts and circumstances of these Chapter 11 Cases and pursuant to sections 1125 and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3020, and other applicable law and rules.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required, and due, proper, timely, and adequate notice of the Confirmation Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.

H.      **Solicitation.**

9.      The Disclosure Statement (and exhibits thereto, including the Plan), a copy of the

Solicitation and Voting Procedures, the applicable form of Ballot, the Disclosure Statement Order

and the Confirmation Hearing Notice (the "***Solicitation Package***") was transmitted and served in

compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation

and Tabulation Procedures approved by the Bankruptcy Court via the Disclosure Statement Order,

and all other applicable rules, laws, and regulations applicable to such solicitation.  In response to

certain concerns that the U.S. Trustee raised concerning solicitation of votes to accept or reject the

Plan of holders of Individual Advance Deposit claims, the Debtors exempted the holders of

Individual Advance Deposit claims (Class 6) from the releases in Section 9.3 of the Plan, unless

such holders of Individual Advance Deposit claims voted to accept the Plan (the "Class 6 Release

Exemption").

10.     As set forth in the *Affidavit of Service re: Solicitation Materials Served on February

7, 2023* [Dkt. No. 187] and the *Affidavit of Service re: Solicitation Materials Served on February

8, 2023* [Dkt. No. 238], on February 7 and 8, 2023, the Solicitation Package was transmitted to

and served on the eligible Holders of Class 3, Class 4, Class 5 and Class 6 Claims, (the "***Voting

Classes***").  Transmission and service of the Solicitation Package was timely, adequate and

sufficient.  No further notice is required.

11.     The form of the Ballots adequately addressed the particular needs of these Chapter

11 Cases and was appropriate for the Holders of Claims in each Voting Class.  The instructions on

each Ballot advised that for the Ballot to be counted, the Ballot had to be properly executed,

completed, and delivered to the Voting Agent so that it was actually received by the Voting Agent

on or before the applicable Voting Deadline.  The period during which the Debtors solicited

acceptance of the Plan was a reasonable period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

12.     The Debtors were not required to solicit votes from the Holders of Claims in Class 1 (Other Priority Claims) or Class 2 (Other Secured Claims) (collectively, the "*Unimpaired Classes*"), as each such Class is Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

13.     The Debtors were not required to solicit votes from Holders of Claims or Interests in Class 7 (Intercompany Claims/Interests) and Class 8 (Equity Interests), (collectively, the "*Deemed Rejecting Classes*"), as the Holders of Claims or Interests in such Classes are Impaired and not entitled to receive distributions on account of their Claims or Interests under the Plan and, thus, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

14.     As described in and as evidenced by the Voting Report and the Class 6 Release Exemption, the transmittal and service of the Solicitation Package (all of the foregoing, the "*Solicitation*") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required.  The Solicitation complied with the Solicitation and Tabulation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and any other applicable rules, laws, and regulations.

**I.     Voting.**

15.     The Voting Report filed with the Bankruptcy Court certifies the method and results of the Ballots tabulated for the Voting Classes.  As of the Voting Deadline, (a) 100% in number and 100% in dollar amount of the Holders of Claims in Class 3 (Mortgage Lender Secured Claims)

9

that timely voted, voted to accept the Plan, (b) 100% in number and 100% in dollar amount of the Holders of Claims in Class 4a (Ongoing Trade Claims at TSJV) that timely voted, voted to accept the Plan, (c) 88.9% in number and 99.2% in dollar amount of the Holders of Claims in Class 4b (Ongoing Trade Claims at CPTS) that timely voted, voted to accept the Plan, (d) 75% in number and 99.8% in dollar amount of the Holders of Claims in Class 5a (Other Unsecured Claims at TSJV) that timely voted, voted to accept the Plan, (e) 86.7% in number and 97.3% in dollar amount of the Holders of Claims in Class 5b (Other Unsecured Claims at CPTS) that timely voted, voted to accept the Plan, (f) 100% in number and 100%  in dollar amount of the Holders of Claims in Class 5c (Other Unsecured Claims at the 1601 Broadway Entities) that timely voted, voted to accept the Plan and (g) 83.3% in number and 76.6% in dollar amount of the Holders of Claims in Class 6 (Individual Advanced Deposit Claims) that timely voted, voted to accept the Plan, in each case without counting the votes of any insider (as such term is defined in section 101(31) of the Bankruptcy Code).  As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation and Tabulation Procedures, and the Local Rules.

**J.    Plan Supplement.**

16.    On March 2, 2023, the Debtors filed the Initial Plan Supplement, consisting of the transaction election; identity of the member of the board of directors and of the officers of the Reorganized Debtors and an initial schedule of Assumed Executory Contracts and Unexpired Leases.[3]  On March 3, 2023, the Debtors filed the First Amended Plan Supplement, consisting of the form of Exit Facility Credit Agreement.[4]

---

[3]    *See Notice of Filing Plan Supplement* [Dkt. No. 214].

[4]    *See Notice of Filing First Amended Plan Supplement* [Dkt. No. 217].

17.     All such materials comply with the terms of the Plan, and the filing and notice of the Plan Supplement was proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all applicable law and no other or further notice is or shall be required.   All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan as if set forth in full therein. Subject to the terms of the Plan, the Debtors reserve the right to and may alter, amend, update, or modify the Plan Supplement before the Effective Date, *provided* that any such alteration, amendment, update, or modification shall be in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the terms of this Confirmation Order.

**K.      Modifications of the Plan.**

18.     Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Plan as reflected herein, in the Plan Supplement, and/or in the revised Plan filed with the Bankruptcy Court prior to entry of this Confirmation Order (collectively, the "***Plan Modifications***").   In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially and adversely change the treatment of any Claims, (d) require re-solicitation of any Holders of any Claims or Interests, or (e) require that Holders of Claims in the Voting Classes be afforded an opportunity to change their previously cast acceptances of the Plan.   Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required.   In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are

11

conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. The Holders of Claims in the Voting Classes are not permitted to change their respective acceptances to rejections as a consequence of the Plan Modifications.

**L.    Bankruptcy Rule 3016.**

19.    In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents. The Debtors appropriately filed the Disclosure Statement with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**M.    Burden of Proof: Confirmation of the Plan.**

20.    The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**N.    Compliance with Bankruptcy Code Requirements: Section 1129(a)(1).**

21.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

(i)    Proper Classification: Sections 1122 and 1123(a)(1).

22.    Article III of the Plan provides for the separate classification of Claims and Interests into eight Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to other Claims or

Interests within that Class. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

    (ii)    <u>Specified Unimpaired Classes: Section 1123(a)(2)</u>.

23.    Article III of the Plan specifies that Claims in the following Classes are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code:

| Class | Claim or Interest |
|---|---|
| 1a, 1b, 1c | Other Priority Claims |
| 2a, 2b, 2c | Other Secured Claims |

    (iii)    <u>Specified Treatment of Impaired Classes: Section 1123(a)(3)</u>.

24.    Article III of the Plan specifies that the Claims in the following Classes are Impaired under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code:

| Class | Claim or Interest |
|---|---|
| 3a, 3b, 3c | Mortgage Lender Secured Claims |
| 4a, 4b, 4c | Ongoing Trade Claims |
| 5a, 5b, 5c | Other Unsecured Claims |
| 6 | Individual Advanced Deposit Claims |
| 7 | Intercompany Interests |
| 8a, 8b | Equity Interests |

    (iv)    <u>No Discrimination: Section 1123(a)(4)</u>.

25.    Article III of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest in accordance with the Plan, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

    (v)    <u>Adequate Means for Plan Implementation: Section 1123(a)(5)</u>.

26.    The Plan, including the various documents and agreements in the Plan Supplement, provides adequate and proper means for implementation of the Plan, including, without limitation:

13

(a) the general settlement of claims and interests; (b) the terms of the Restructuring Transactions to be entered into on the Effective Date including the equitization of a portion of the Mortgage Loan, cancellation of the Interests in TSJV and CPTS, and entry into the Exit Facility Credit Agreement; (c) the issuance of the Reorganized TSJV Equity Interests; (d) the preservation of certain causes of action; and (e) the termination of any surviving obligations under the Restructuring Support Agreement.

(vi)    Voting Power of Equity Securities: Section 1123(a)(6).

27.    The Reorganized Debtors are not corporations and therefore section 1123(a)(6) of the Bankruptcy Code is not applicable in these cases.

(vii)    Designation of Directors and Officers: Section 1123(a)(7).

28.    The identity of the officer of the Reorganized Debtors has been disclosed in the Plan Supplement prior to the Effective Date.   To the extent that section 1123(a)(7) of the Bankruptcy Code applies to the Reorganized Debtors, the officer was appointed in accordance with the interests of creditors and with public policy, and, therefore, satisfies section 1123(a)(7) of the Bankruptcy Code.

(viii)    Impairment / Unimpairment of Classes: Section 1123(b)(1).

29.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Specifically, Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

(ix)    Assumption and Rejection of Executory Contracts and Unexpired Leases: Section 1123(b)(2).

30.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Section 5.1(1) of the Plan provides for the rejection of the Debtors' Executory Contracts and Unexpired Leases on the Effective Date.  In accordance with the provisions of sections 365 and 1123(b)(2)

14

of the Bankruptcy Code, except as otherwise provided in the Plan, the Plan Supplement, or this Confirmation Order, all Executory Contracts or Unexpired Leases shall be rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is designated on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement; (ii) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (iii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iv) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; or (v) is subject to a motion to reject pursuant to which the requested effective date of such rejection is after the Effective Date.

      (x)      <u>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action: Section 1123(b)(3)</u>.

31.      The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable. The foregoing includes, without limitation, the settlement of Claims, Causes of Action and controversies embodied in Article IV of the Plan including, without limitation, in Section 4.15 and Section 4.16 of the Plan.

32.    Section 9.3(a) of the Plan describes certain releases granted by the Debtors and their Estates (the "***Debtor Releases***").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases.  For the reasons set forth on the record of these Chapter 11 Cases and the evidence proffered, admitted, or adduced at the Confirmation Hearing, such releases are a necessary and integral part of the Plan.  The Debtor Releases are "fair and equitable" and "in the best interests of the estate" and the Holders of Claims and Interests considering (a) the probability of success in litigation of the released Claims and Causes of Action given uncertainty in fact and law with respect to the Claims and Causes of Action; (b) the complexity and likely duration and expense of litigating the released Claims and Causes of Action; (c) the arm's-length negotiations that produced the settlements embodied in the Plan, (d) the overwhelming creditor support for the Debtor Releases, as evidenced by the Voting Report.  Additionally, the Debtor Releases are: (x) a good-faith settlement and compromise of the Claims and Causes of Action released by Section 9.3(a) of the Plan; (y) given and made, after due notice and opportunity for hearing; and (z) a bar to any of the Debtors or Reorganized Debtors asserting any Claim or Cause of Action released by Section 9.3(a) of the Plan.

33.    Section 9.3(b) of the Plan describes certain releases granted by the Releasing Parties (the "***Third-Party Releases***").  The Third-Party Releases provide finality for the Debtors, Reorganized Debtors and the Released Parties (as applicable) regarding the parties' respective historic relationships with the Debtors and obligations under the Plan.  The Ballots unambiguously stated that the Plan contains the Third-Party Releases and set forth the terms of the Third-Party Releases.  The Ballots also made clear that only Holders of Claims in the Voting Classes that do not opt out of the release provisions in the Plan on their Ballot are bound by the Third-Party Releases; for the avoidance of doubt, as described in Paragraph 9 above, Holders of Claims or

Interests in Class 6 (Individual Advanced Deposit Claims) who voted to reject the Plan, did not

vote on the Plan or abstained from voting on the Plan are not Releasing Parties and Holders of

Claims in the Voting Classes that voted to reject or are deemed to reject the Plan are not Releasing

Parties.

34.    The Third-Party Releases are (1) in exchange for the good and valuable

consideration provided by the Released Parties; (2) a good faith settlement and compromise of the

Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and

their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and

opportunity for hearing; (6) an essential component of the Plan and the Restructuring; and (7) a

bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to

such releases.   The Third-Party Releases are consensual because all Releasing Parties were

provided with extensive and sufficient notice of the Chapter 11 Cases, the Plan, the deadline to

object to confirmation of the Plan, the ability to opt out of such Third-Party Releases and all such

parties were properly informed that the Plan contained Third-Party Releases that could affect such

parties' rights.

35.    The Third-Party Releases are sufficiently specific as to put the Releasing Parties on

notice of the nature of the released Claims and Causes of Action, and they are appropriately

tailored under the facts and circumstances of these Chapter 11 Cases.  The Third-Party Releases

are conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, and the

Ballots.

36.    The Third-Party Releases are integral to the Plan because they, *inter alia*, facilitated

participation in both the formation of the Plan and the chapter 11 process generally and were

critical in incentivizing the parties to support the Plan.  As such, the Third-Party Releases offer

certain protections to parties that participated constructively in the Debtors' chapter 11 process by, among other things, supporting the Plan.

37.     The exculpation, described in Section 9.4 of the Plan (the "***Exculpation***"), is appropriate under applicable law because it was proposed in good faith and is appropriately limited in scope.   This Confirmation Order shall provide that the Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. For the avoidance of doubt, nothing in Section 9.4 of the Plan shall, nor shall it be deemed to, exculpate any Exculpated Party from any Retained Causes of Action.

38.     The injunction provision set forth in Section 9.5 of the Plan is necessary to implement, preserve, and prevent actions against the Debtors, the Exculpated Parties, or the Released Parties and by extension the compromise and settlement upon which the Plan is founded, and is narrowly tailored to achieve this purpose.

39.     Section 4.13(b) of the Plan appropriately provides that in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, but subject in all respects to Article IX of the Plan, the Reorganized Debtors will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date.   The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

40.     Except for the Mortgage and the Walber Mortgage, which shall remain in full force and effect following the Effective Date and shall continue to secure the amounts outstanding under the Exit Facility Credit Agreement, the release of all mortgages, deeds of trust, Liens, pledges, or other security interests against the property of the Estates described in Section 4.7 (the "***Lien Release***") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

(xi)     Modification of Rights: Section 1123(b)(5).

41.     The Plan modifies the rights of Holders of Claims or Interests, as applicable, in Class 3 (Mortgage Lender Secured Claims), Class 4 (Ongoing Trade Claims), Class 5 (Other Unsecured Claims), Class 6 (Individual Advanced Deposit Claims), Class 7 (Intercompany Claims and Interests), and Class 8 (Equity Interests), as permitted by section 1123(b)(5) of the Bankruptcy Code.

(xii)     Additional Plan Provisions: Section 1123(b)(6).

42.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Holders of Claims and Interests, (b) resolution of Disputed Claims, (c) allowance of certain Claims, and (d) retention of Court jurisdiction, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.  The failure to address any provisions of the Bankruptcy Code specifically in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

(xiii)     Cure of Defaults: Section 1123(d).

43.     The Debtors have cured, or provided adequate assurance that the Debtors will cure, defaults (if any) under or relating to each of the Executory Contracts that are being assumed and

19

assigned to the Reorganized Debtors pursuant to the Plan. In addition, the Debtors' assigns to such Executory Contracts have provided adequate assurance of future performance under such Executory Contracts being assumed and assigned.

**O.    Debtor Compliance with the Bankruptcy Code: Section 1129(a)(2).**

44.    The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

  a.    is an eligible debtor under section 109 of the Bankruptcy Code, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

  b.    has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

  c.    complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order and all other applicable law, in transmitting the Solicitation Packages and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**P.    Plan Proposed in Good Faith: Section 1129(a)(3).**

45.    The Debtors have negotiated, developed, and proposed the Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In so determining, the Bankruptcy Court has considered the facts and record of these Chapter 11 Cases, the Disclosure Statement, and evidence proffered, admitted, or adduced at the Confirmation Hearing, and examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, and the process leading to confirmation. The Debtors' Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to pursue a sale transaction (the "***Sale Transaction***") through which all, or substantially all, of the Debtors' assets would be sold and proceeds generated therefrom would be distributed to

the Debtors' or, in the absence of a Qualified Bid (as defined in the Bidding Procedures Motion), implement an equitization restructuring (the "***Restructuring***") to reorganize and emerge from chapter 11 with a financially deleveraged capital structure.  The Plan (including all documents necessary to effectuate the Plan) and the Plan Supplement were negotiated in good faith and at arm's length among the Debtors and their key stakeholders, including the Secured Lender, the DIP Lender and the Committee.  Additionally, the Committee Settlement and the IHG Settlement that are embodied in the Plan were negotiated in good faith and at arm's-length and reflect the best possible compromise and settlement that could be reached given the facts and circumstances surrounding the Debtors and these Chapter 11 Cases.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, and necessary for the Debtors' successful implementation of the Plan.

**Q.      Payment for Services or Costs and Expenses: Section 1129(a)(4).**

46.      The Debtors have satisfied section 1129(a)(4) of the Bankruptcy Code.  Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.  All such costs and expenses of the Debtors' professionals shall be paid in accordance with the Plan.

**R.      Directors, Officers, and Insiders: Section 1129(a)(5).**

47.      The Debtors have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code.  The Plan Supplement includes the name of the officer of the Reorganized

21

Debtors that will serve after confirmation of the Plan, and the appointment to such position is consistent with the interests of the Holders of Claims and Interests and with public policy.

**S.      No Rate Changes: Section 1129(a)(6).**

48.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**T.      Best Interest of Creditors: Section 1129(a)(7).**

49.      The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered, admitted, or adduced at the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if such Debtors were hypothetically liquidated under chapter 7 of the Bankruptcy Code as of the Effective Date.

**U.      Acceptance by Certain Classes: Section 1129(a)(8).**

50.      The Unimpaired Classes are Unimpaired by the Plan and, accordingly, Holders of Claims in such Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  The Voting Classes are Impaired and each class has voted to accept the Plan, as established by the Voting Report.

51.     The Deemed Rejecting Classes are Impaired and deemed to reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.  Holders of Claims in the Deemed Rejecting Classes will not receive or retain any property on account of their Claims or Interests.  Therefore, the Plan does not satisfy the requirements of section 1129(a)(8) with respect to the Deemed Rejecting Classes. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) of the Bankruptcy Code because Classes 3a, 3b, 3c, 4a, 4b, 5a, 5b, 5c and 6 have voted to accept the Plan, and, with respect to the Deemed Rejecting Classes, section 1129(b) of the Bankruptcy Code is satisfied as set forth below.

**V.      Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code: Section 1129(a)(9).**

52.     The treatment of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, DIP Claims, Priority Tax Claims, and statutory fees imposed by 28 U.S.C. § 1930, together with interest if any, imposed by 31 U.S.C. § 3717, under Article II of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**W.      Acceptance by At Least One Impaired Class: Section 1129(a)(10).**

53.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Reports, Classes 3a, 3b, 3c, 4a, 4b, 5a, 5b, 5c and 6, which are Impaired, voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**X.      Feasibility: Section 1129(a)(11).**

54.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting Confirmation of the Plan proffered, admitted, or adduced by the Debtors

at or prior to the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, except as provided for under the Plan; and (e) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.

**Y.      Payment of Fees: Section 1129(a)(12).**

55.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 2.6 of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a), together with interest, if any, under 31 U.S.C. § 3717.

**Z.      Continuation of Employee Benefits: Section 1129(a)(13).**

56.      The Debtors maintain no programs providing for employee retirement benefits, as defined in section 1114 of the Bankruptcy Code, accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable.

**AA.     Non-Applicability of Certain Sections: 1129(a)(14), (15), and (16).**

57.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors (a) are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, (b) are not individuals, and (c) are each a moneyed, business, or commercial corporation.

**BB.     "Cram Down" Requirements: Section 1129(b).**

58.      The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Class 7 (Intercompany Claims and Interests) and Class 8 (Equity

24

Interests) are deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code. The evidence in support of the Plan that was proffered, admitted, or adduced at or prior to the Confirmation Hearing is reasonable, persuasive, credible, and accurate, has not been controverted by other evidence, and establishes that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to such Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim. *Third*, the Plan does not discriminate unfairly with respect to such Classes because similarly situated Holders of Claims and Interests will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. Accordingly, the Plan satisfies the requirement of section 1129(b)(1) and (2) of the Bankruptcy Code. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**CC.    Only One Plan: Section 1129(c).**

59.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed with respect to each Debtor in each of these Chapter 11 Cases.

**DD.    Principal Purpose of the Plan: Section 1129(d).**

60.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

25

**EE.** **Not Small Business Cases: Section 1129(e).**

61.    These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**FF.** **Satisfaction of Confirmation Requirements.**

62.    Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, admitted, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**GG.** **Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

63.    Without limiting or modifying the rights of any party set forth in Section 11.3 of the Plan, each of the conditions precedent to the Effective Date, as set forth in Section 8.1 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section 8.2 of the Plan.

**HH.** **Implementation.**

64.    The terms of the Plan, including the Plan Supplement, and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "***Plan Documents***") are incorporated by reference and constitute essential elements of the Plan and this Confirmation Order. Consummation of each such Plan Document is in the best interests of the Debtors, the Debtors' Estates, and Holders of Claims and Interests, and such Plan Documents are hereby approved. The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents have been negotiated in good faith, at arm's-length, are fair

and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

## II.    Settlements Embodied in Plan Satisfy Bankruptcy Rule 9019.

65.    All of the settlements and compromises pursuant to and in connection with the Plan or incorporated by reference into the Plan comply with the requirements of section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019 and in consideration for the benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtors, the Debtors' Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.  The foregoing includes, without limitation, the settlement of Claims, Causes of Action and controversies embodied in Sections 4.15 and 4.16 of the Plan.

## JJ.    Authority to Pursue, Settle, or Abandon Retained Causes of Action.

66.    All Retained Causes of Action are reserved and preserved and shall not be impacted or affected in any way by deemed consolidation of the estates.  From and after the Effective Date, except as otherwise set forth in Article IX of the Plan, prosecution and settlement of all Retained Causes of Action shall be the sole responsibility of the Reorganized Debtors pursuant to the Plan and the Confirmation Order.  From and after the Effective Date, the Reorganized Debtors shall retain and may enforce any claims, demands, rights, and causes of action that Debtors' Estate may hold.  The Reorganized Debtors may pursue any such retained claims, demands, rights or causes of action, as appropriate, as the sole representative of the estates pursuant to section 1123(b)(3) of the Bankruptcy Code.

**KK.    Good Faith.**

67.    The Debtors, the Secured Lender, the DIP Lender, the Committee, and other Released Parties, the Exculpated Parties, and their respective successors, predecessors, control persons, affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, advisors and agents, as applicable, acted in good faith and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan; and (b) take the actions authorized and directed by this Confirmation Order.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding and determination that (a) each Released Party's in-court or out-of-court efforts to develop, negotiate, and propose the Plan were, with respect to each other Released Party and any other Person, in good faith and not by any means forbidden by law and (b) the settlements reflected in the Plan are (i) in the best interests of the Debtors and their Estates, (ii) fair, equitable, and reasonable, and (iii) approved by the Bankruptcy Court pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**LL.    Retention of Jurisdiction.**

68.    The Bankruptcy Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, these Chapter 11 Cases, including the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

**IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.    **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

28

applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined

to be a conclusion of law, it shall be deemed so, and vice versa.

2.      **Confirmation of the Plan**.  The Plan is approved in its entirety and **CONFIRMED**

under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the

Plan, including, without limitation, the Plan Documents, are hereby authorized and approved.  The

terms of the Plan are incorporated by reference into and are an integral part of this Confirmation

Order.  The failure to specifically describe, include, or to refer to any particular article, section, or

provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of

such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is

confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved

in their entirety, and all are incorporated herein by this reference.

3.      **Objections**.  All objections to Confirmation of the Plan and other responses,

comments, statements, or reservation of rights, if any, in opposition to the Plan that have not been

withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order

are overruled on the merits.

4.      **Plan Classification Controlling.**  The terms of the Plan shall solely govern the

classification of Claims and Interests for purposes of the distributions to be made thereunder.  The

classification set forth on the Ballots tendered to or returned by the Holders of Claims in connection

with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject

the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise

affect, the actual classification of Claims and Interests under the Plan for distribution purposes;

(c) may not be relied upon by any Holder of a Claim or Interest as representing the actual

classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

5.    **Confirmation Hearing Notice**.  The Confirmation Hearing Notice, Confirmation Hearing Publication Notice, Bar Date Affidavits, and any other notice filed or otherwise published by the Debtors, complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

6.    **Solicitation**.  The solicitation of votes on the Plan (including the Class 6 Release Exemption) complied with the Solicitation and Tabulation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and applicable non-bankruptcy law.

7.    **Plan Modifications**.  The modifications, amendments, and supplements made to the Plan following the solicitation of votes thereon constitute technical changes and do not materially adversely affect or change the proposed treatment of any Claims or Interests.  After giving effect to such modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The filing of the Plan and proposed form of this Confirmation Order with the Bankruptcy Court on March 14, 2023, which contain such modifications, and the disclosure of such modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.  Accordingly, such modifications do not require additional disclosure or re-solicitation of votes under sections 1125, 1126, or 1127 of the Bankruptcy Code or Bankruptcy Rule 3019, nor do they require that the Holders of Claims in the Voting Classes be afforded an

opportunity to change their previously cast votes on the Plan.  The Holders of Claims in the Voting

Classes who voted to accept the solicitation version of the Plan are deemed to accept the Plan as

modified.  The Plan, as modified, is, therefore, properly before this Court and all votes cast with

respect to the Plan prior to such modification shall be binding and shall apply with respect to the

Plan.

8.      **No Action Required.**  No action of the director, equity holders, manager, or

members of the Debtors or Reorganized Debtors is required to authorize the Debtors or

Reorganized Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or

effectuate, as the case may be, the Plan, or any contract, assignment, certificate, instrument, or

other document to be executed, delivered, adopted, or amended in connection with the

implementation of the Plan and the other Plan Documents.

9.      **Binding Effect**.  On the date of and after entry of this Confirmation Order, in

accordance with section 1141(a) of the Bankruptcy Code and subject to the occurrence of the

Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(d), 6004(h), or otherwise, the

terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective

(and/or adopted, where applicable) and enforceable and deemed binding upon the Debtors,

Reorganized Debtors and any and all Holders of Claims or Interests and such Holder's respective

successors and assigns (regardless of whether or not (a) the Holders of such Claims or Interests

voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the Holders

of such Claims or Interests are entitled to a distribution under the Plan), all Entities that are parties

to or are subject to the settlements, compromises, releases (including the releases set forth in

Section 9.3 of the Plan), waivers, discharges, exculpations, and injunctions provided for in the

Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all

non-Debtor parties to Executory Contracts and Unexpired Leases. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

10.    **Effectiveness of All Actions**. All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the Debtors or Reorganized Debtors.

11.    **Plan Implementation**.

(a)    Pursuant to sections 1123(a)(5)(B) and 1123(a)(5)(D) of the Bankruptcy Code, on, or, unless specifically provided otherwise herein or the Plan, prior to the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors, in accordance with Article IV of the Plan, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan including (a) the Restructuring Transactions, (b) the Exit Facility Credit Agreement, (c) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (d) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent

32

with the terms of the Plan; and (e) all other actions that the Debtors determine are necessary or appropriate and that are not inconsistent with the Plan.

(b)    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, the Plan Supplement, and the Plan Documents including, (i) the rejection or assumption, as appropriate, of any Executory Contracts and Unexpired Leases, and (ii) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan shall be effective prior to, on, or after the Effective Date pursuant to this Confirmation Order, without further notice, application to, or order of this Court, or further action by the Debtors or Reorganized Debtors.

(c)    To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the Debtors or Reorganized Debtors, this Confirmation Order shall, pursuant to sections 1123(a)(5)(B) and 1123(a)(5)(D) of the Bankruptcy Code, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of Debtors and Reorganized Debtors (as applicable).

(d)    All such transactions effected by the Debtors during the pendency of these Chapter 11 Cases from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Confirmation Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

12.    **Committee Settlement Approved**.  The settlement described in Section 4.15 of the Plan (the "***Committee Settlement***") constitutes a settlement pursuant to section 1123(b)(3)(A) and Bankruptcy Rule 9019 among the Debtors, the Secured Lender, the DIP Lender and the Committee.  The related provisions of the Plan shall constitute a good faith compromise and

settlement of all Claims, Interests, issues, disputes and controversies that were, or could have been asserted in connection with these Chapter 11 Cases.

13.     The Committee Settlement was negotiated at arm's length and in good faith, is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Committee Settlement and the settlement of all such Claims, Interests, and controversies related thereto.

14.     **IHG Settlement Approved**.  The settlement described in Section 4.16 of the Plan (the "*IHG Settlement*") constitutes a settlement pursuant to Bankruptcy Rule 9019 among the Debtors, the Secured Lender and Holiday Hospitality Franchising, LLC.  The related provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, issues, disputes and controversies that were, or could have been asserted in connection with these Chapter 11 Cases.

15.     The IHG Settlement was negotiated at arm's length and in good faith, is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the IHG Settlement and the settlement of all such Claims, Interests, and controversies related thereto.

16.     **Cancellation of Existing Securities and Agreements**.  On the Effective Date, except to the extent otherwise provided in the Plan or this Confirmation Order, all notes, instruments, certificates, credit agreements, and other documents evidencing Claims or Interests (including the DIP Facility Documents, and the Equity Interests), and any Equity Interests that are not represented by certificates or other instruments, shall be canceled and surrendered and the

34

obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, canceled, and of no force or effect against the Debtors without any further action on the part of the Debtors or any other Person.  Holders of or parties to such canceled instruments and other documentation will have no rights arising from or relating to such instruments, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan; provided that the Mortgage and the Walber Parcel Mortgage shall not be released or discharged and shall continue to secure (x) the portion of the Mortgage Loan and (y) the portion of the Walber Parcel Mortgage Loan, respectively, that, in each case, remains outstanding under the Exit Facility Credit Agreement pursuant to the Plan.

17.    **Corporate Governance**.  CTPS will be subject to a Dissolution Transaction on the Effective Date, or as promptly thereafter as possible, and CPTS will be deemed to cease to exist as of the Effective Date. The Reorganized Debtors are authorized to make any and all filings that may be required in connection with the Reorganized Debtors' New Governance Documents with the appropriate governmental offices and or agencies and take any and all other actions that may be required to render the Reorganized Debtors New Governance Documents effective.  Each of the Reorganized Debtors shall continue to exist on and after the Effective Date as a separate legal entity with all of the powers available to such legal entity under applicable law and pursuant to the Reorganized Debtor's New Governance Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law.  Without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law, and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation,

causing: (a) a Reorganized Debtor to be merged into another Reorganized Debtor or an Affiliate of a Reorganized Debtor; (b) a Reorganized Debtor to be dissolved; (c) the legal name of a Reorganized Debtor to be changed; (d) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter; or (e) the reincorporation of a Reorganized Debtor under the law of any jurisdiction.  For the avoidance of doubt, no Reorganized Debtor will be a successor in interest to any Debtor unless otherwise specified in the Plan.

18.    **Directors and Officers of the Debtors**.  The Debtors have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code.  The Plan Supplement includes the name of the officer of the Reorganized Debtors that will serve after confirmation of the Plan, and the appointment to such position is consistent with the interests of the Holders of Claims and Interests and with public policy.

19.    **Dissolution of Committee**.  On the Effective Date, the Committee shall be deemed to have been dissolved, and the members thereof shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, without need for a further order of the Bankruptcy Court; *provided*, *however* that obligations owing to or from the Committee arising under confidentiality agreements, joint interest agreements and protective orders, if any, entered during the Chapter 11 Cases shall remain in full force and effect according to their terms; provided, further that the Committee shall continue in existence (and its counsel shall be compensated) for purposes of preparing and prosecuting fee applications filed in compliance with the Plan.  Except as expressly agreed by the Debtors and the Reorganized Debtors, the Debtors and the Reorganized Debtors shall have no obligation to pay or reimburse any fees or expenses of any official or unofficial committee of creditors incurred after the Effective Date except with regard to the preparation and prosecution of fee applications.

20.    **Preservation of Causes of Action.**    In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Section 9.3 of the Plan, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including any Retained Cause of Action.    The Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.    Except to the extent any such claim is specifically satisfied, settled, and released herein, in accordance with and subject to any applicable law, the Debtor's inclusion or failure to include any Cause of Action as a Retained Causes of Action shall not be deemed an admission, denial, or waiver of any claims, demands, rights, or causes of action that the Debtor or Estate may hold against any Person. Except to the extent any such claim is specifically satisfied, settled, and released herein, the Debtor intends to preserve those claims, demands, rights, or causes of action designated as Retained Causes of Action.

21.    Notwithstanding the foregoing or anything to the contrary herein, all Avoidance Actions against non-Insiders of the Debtors shall be waived upon the Effective Date, except those against Clear Channel Spectacolor LLC, which Avoidance Actions are expressly preserved.    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.    The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.    Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including pursuant to Section 9.3 of the Plan, the Debtors or Reorganized Debtors, as applicable, expressly reserve all

37

Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Plan.

22.    **Substitution in Pending Legal Actions.**   On the Effective Date, Reorganized Debtors, as applicable, shall be deemed to be substituted as the party to any litigation in which the Debtors are a party, including (but not limited to) (i) pending contested matters or adversary proceedings in the Bankruptcy Court, (ii) any appeals of orders of the Bankruptcy Court and (iii) any state court or federal or state administrative proceedings pending as of the Petition Date.  The Reorganized Debtors and its professionals are not required to, but may, take such steps as are appropriate to provide notice of such substitution.

23.    **Professional Compensation**.    The provisions governing compensation of Professionals set forth in Section 2.3 of the Plan are approved in their entirety.  All final requests for Professional Fee Claims through and including the Effective Date shall be Filed no later than thirty-five (35) days after the Effective Date.  Any objections to Professional Fee Claims shall be served and filed no later than sixty (60) days after the filing of such final applications for payment of Professional Fee Claims.

24.    **Payment of Professional Fee Claims**.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate and any Debtor or Reorganized Debtor, as the case may be, may pay the charges incurred by the Debtors or Reorganized Debtors, as the case may be, on and after the Effective Date for any Professional Fee Claim, without application to or approval by the Bankruptcy Court.

38

25.    **Subordination.**  Except as may be the result of the settlement described in Section 4.15 of the Plan, the allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors reserve(s) the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

26.    **Release of Liens.**  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date concurrently and consistent with the treatment provided for Claims and Interests in Article III of the Plan, all deeds of trust, Liens against, security interests in, or other encumbrances or interests in property of any Estate shall be deemed fully released and discharged; provided that the Mortgage and the Walber Parcel Mortgage shall not be released or discharged and shall continue to secure (x) the portion of the Mortgage Loan and (y) the portion of the Walber Parcel Mortgage Loan, respectively, that, in each case, remains outstanding under the Exit Facility Credit Agreement pursuant to the Plan.

27.    **Insurance.**  As of the Effective Date, each of the Debtors' insurance policies shall automatically vest in the Reorganized Debtors without necessity for further approvals or orders. Other than any insurance contracts specifically rejected pursuant to a Court Order (including the Confirmation Order), from and after the Effective Date, all insurance contracts will be assumed by the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code.

39

28. **Rejection of Contracts and Leases.** On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume, assume and assign, or reject Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is designated on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement; (ii) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (iii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iv) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; or (v) is subject to a motion to reject pursuant to which the requested effective date of such rejection is after the Effective Date.

29. **Distributions**. All distributions pursuant to the Plan shall be made in accordance with Article VI of the Plan, and such methods of distribution are approved.

30. **Compromise and Settlement of Claims, Interests, and Controversies**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, which distributions, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of this Confirmation Order constitutes approval of the compromise or settlement of all such Claims, Interests, and controversies, as well

as a finding by the Bankruptcy Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

31.     In accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan constitutes the good-faith compromise and settlement among the Debtors, Secured Lender and the Committee of all Claims, Interests, issues, disputes and controversies that were, or could have been asserted in connection with these Chapter 11 Cases. Such compromise and settlement is made in exchange for consideration and is in the best interests of the Debtors, the Committee and the applicable Holders of Claims, is within the reasonable range of possible litigation outcomes, is fair, equitable and reasonable, and is an essential element of the resolution of these Chapter 11 Cases.

32.     In accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan constitutes the good-faith compromise and settlement among the Debtors, Secured Lender and Holiday Hospitality Franchising LLC of all Claims, Interests, issues, disputes and controversies that were, or could have been asserted in connection with these Chapter 11 Cases. Such compromise and settlement is made in exchange for consideration and is in the best interests of the Debtors and Holiday Hospitality Franchising LLC, is within the reasonable range of possible litigation outcomes, is fair, equitable and reasonable, and is an essential element of the resolution of these Chapter 11 Cases.

33.      **Release, Discharge, Exculpation, and Injunction Provisions**.  All discharge, injunction, release, and exculpation provisions set forth in the Plan, including but not limited to, the following releases, injunction, exculpation and related provisions contained in Sections 9.3, 9.4 and 9.5 of the Plan, are approved and shall be effective and binding on all persons and entities to the extent provided therein:

   a.   **Debtor Releases**. As set forth in Section 9.3 of the Plan and except as otherwise provided in the Plan or this Confirmation Order, pursuant to Section 1123(b) of the Bankruptcy Code, upon the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, the Debtors, the Reorganized Debtors (as applicable) and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any cause of action derivatively, by or through the foregoing Entities, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the efforts of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Plan and the transactions contemplated herein and hereby, shall forever release, waive and discharge, to the maximum extent permitted by law, all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity

or otherwise against the Released Parties that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or before the Effective Date, and in any way relating to (a) the Debtors and any Affiliates or subsidiaries of the Debtors, (b) the Reorganized Debtors, (c) the Estates, (d) the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, (e) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (f) the Chapter 11 Cases, (g) the Plan, including the solicitation of votes on the Plan, (h) the Solicitation and Disclosure Statement, (i) the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, (j) the Restructuring Support Agreement, (k) the Exit Facility Credit Agreement, (l) the purchase, sale, or recission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, (m) the DIP Facility Documents (and any payments or transfers in connection therewith), (n) any Avoidance Actions, and (o) the negotiation, formulation or preparation of the foregoing agreements and transactions described in this paragraph (the foregoing, the "***Debtor Released Claims***"); provided, however, that (i) no Released Party shall be released hereunder from any Debtor Released Claim as a result of any act, omission, transaction, event or other occurrence by a Released Party that has been or is hereafter found by any court or tribunal by Final Order to constitute gross negligence, fraud, or willful misconduct and (ii) the foregoing release shall not apply to or release any express contractual or financial obligations owed to the Debtors or the Reorganized Debtors or any right or obligation arising under or that

is part of the plan or any agreement entered into pursuant to, in connection with or contemplated by the Plan.

b. **Third Party Releases**. As set forth in Section 9.3 of the Plan and except as otherwise provided in the Plan or this Confirmation Order, to the fullest extent permitted by applicable law, and not inconsistent with the Bankruptcy Court's orders, upon the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the efforts of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the Plan and the transactions, contracts and instruments contemplated herein and hereby, each of the Releasing Parties agrees to the release provisions in this Plan and shall forever release, waive and discharge, to the maximum extent permitted by law, all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise against the Released Parties that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or before the Effective Date and in any way relating to or arising from, in whole or in part, (a) the Debtors and any Affiliates or subsidiaries of the Debtors, (b) the Reorganized Debtors (as applicable), (c) the Estates, (d) the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, (e) the subject matter of, or the

transactions or events giving rise to, any claim or equity interest that is treated in

the Plan, (f) the contractual arrangements between the Debtors and any Released

Party, (g) the Chapter 11 Cases, (h) the Plan, including the solicitation of votes on

the Plan, (i) the Solicitation and Disclosure Statement, (j) the Exit Facility Credit

Agreement, (k) the restructuring of any Claim or Equity Interest before or during

the Chapter 11 Cases, and (l) the negotiation, formulation or preparation of the

foregoing agreements and transactions described in this paragraph (the foregoing,

the "**_Releasing Party Released Claims_**"); provided, however, that (i) no Released

Party shall be released hereunder from any Releasing Party Released Claim as a

result of any act, omission, transaction, event or other occurrence by a Released

Party that has been or is hereafter found by any court or tribunal by Final Order to

constitute gross negligence, fraud, or willful misconduct; (ii) the foregoing release

shall not apply to or release any express contractual or financial obligations or any

right or obligation arising under or that is part of the Plan or any agreement entered

into pursuant to, in connection with or contemplated by the Plan; and (iii) the

foregoing release shall not apply to or release any surviving obligations under the

DIP Facility.

c.  **Exculpation**. As set forth in Section 9.4 of the Plan and except as otherwise

provided in the Plan or this Confirmation Order, to the fullest extent permitted by

applicable law, and not inconsistent with the Bankruptcy Court's orders, except

with respect to any acts or omissions expressly set forth in and preserved by the

Plan, the Plan Supplement, or definitive documents, no Exculpated Party shall

have or incur, and each Exculpated Party is hereby released and exculpated from,

45

any Claim, Equity Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, loss, remedy, or liability for any Claim in connection with or arising out of the filing, solicitation, confirmation, or consummation of the Plan; except for gross negligence, fraud, or willful misconduct as determined by a Final Order. The Exculpated Parties and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to this plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

d. **General Injunction**. As set forth in Section 9.5 of the Plan and except as otherwise provided in the Plan or this Confirmation Order, all Entities who have held, hold or may hold Claims or Equity Interests (other than the Claims Reinstated under this Plan) and all other parties in interest in the Chapter 11 Cases, along with their respective current and former employees, agents, officers, directors, principals and Affiliates, permanently are enjoined, as of the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, (b) enforcing, attaching,

collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors or Reorganized Debtors, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors, or (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due the Debtors or Reorganized Debtors or against the Property or interests in Property of the Debtors or Reorganized Debtors, on account of such Claims or Equity Interests; provided, however, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms hereof and the contracts, instruments, releases, indentures and other agreements and documents delivered or assumed under or in connection with the Plan.

e.  **Injunction against Interference with Plan**. As set forth in Section 9.5 of the Plan and except as otherwise provided in the Plan or this Confirmation Order, all Holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; provided, that the foregoing shall not enjoin any party to the Restructuring Support Agreement from exercising any of its rights or remedies under the Restructuring Support Agreement in accordance with the terms thereof.

34.  **Tax Withholding**.  Pursuant to the Plan, including Section 6.12 thereof, to the extent applicable, the Debtors and any applicable withholding agent shall comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting

47

requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding Taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. All Persons holding Claims against any Debtor shall be required to provide any additional information necessary for the Debtors or the Reorganized Debtors (as applicable) and any applicable withholding agent to comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit, including an Internal Revenue Service Form W-8 or W-9, as applicable, and any other applicable tax forms.

35. **Payment of Statutory Fees**. On or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, together with interest, if any, pursuant to 31 U.S.C. § 3717, will be paid by the Debtors in Cash. After the Effective Date, the Reorganized Debtors shall be responsible for filing required post-confirmation reports and paying quarterly Bankruptcy Fees due to the U.S. Trustee for the Reorganized Debtors until the entry of a final decree in the Chapter 11 Cases or until the Chapter 11 Cases are converted or dismissed.

36. **Documents, Mortgages and Instruments**. Each federal, state, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages or instruments necessary or appropriate to effectuate, implement or consummate the Plan.

37. **Return of Deposits**. All utilities, including any utility company who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during these Chapter 11 Cases (collectively, the "***Deposits***"), whether pursuant to the *Order (I) Prohibiting Utility Providers from Altering Refusing or Discontinuing Services,*

48

*(II) Approving Deposit Adequate Assurance of Payment, And (III) Establishing Procedures for Resolving Requests By Utility Companies For Additional Assurance of Payment* [Dkt. No. 120] (the "***Utilities Order***") or otherwise, including, but not limited to, gas, electric, telephone, data, cable, trash, freight, and waste management services, are directed to return such Deposits to the Reorganized Debtors within 15 days following the Effective Date.

38.    **Filing and Recording**.  This Confirmation Order is binding upon and shall govern the acts of all persons or entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any Stamp or Similar Tax (as that term is defined in the Plan).

39.    **Continued Effect of Stays and Injunctions**.  Unless otherwise provided in the Plan, the Confirmation Order, or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

40.    **Debtors' Actions Post-Confirmation Through the Effective Date**.  During the period from entry of this Confirmation Order through and until the Effective Date, each of the

Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Bankruptcy Court that is in full force and effect.

41.    **Third Party Union Liability**.  Vornado Capital Partners, L.P. and Vornado Capital Partners Parallel, L.P. and all other direct and indirect owners of the Mezzanine Borrowers (as defined in the Restructuring Support Agreement) (other than any such owners acquiring their interests at or subsequent to the equitization, transfer or other disposition of ownership interests in the Mezzanine Borrowers) shall have no liability to the New York Hotel and Motel Trades Counsel, AFLCIO for any obligations relating to the Property with respect to that certain Collective Bargaining Agreement, dated as of July 1, 2012, by and between Hotel Association of New York City, Inc. and the Union, or otherwise, including any withdrawal liability or other liability in respect of The New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund, arising on or after the Effective Date.

42.    The *Objection of Clear Channel Spectacolor, LLC to Confirmation of Debtors' Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [ECF No. 232] is withdrawn.

43.    Notwithstanding any other conflicting provisions of the Plan or this Confirmation Order, the following provisions shall control with respect to: (i) the "Lease",[5] (ii) the rights,

---

[5] The Lease means that certain Lease dated January 1, 1996, as amended from time to time, including by that certain: (i) Amendment of Lease, dated as of July 16, 2001, (ii) Second Amendment of Lease, dated as of August 1, 2002, (iii) Third Amendment of Lease, dated as of January 31, 2004, (v) Fourth Amendment of Lease, dated as of February 1, 2010; and (v) Fifth Amendment of Lease and Agreement of Sublease, dated as of December 31, 2018 (such amendment, the "Fifth Amendment").

obligations, and claims of Clear Channel Spectacolor, LLC ("Clear Channel"), TSJV, CPTS and

the Reorganized Debtors related to the Lease, and (iii) the treatment of the claims of Clear Channel

under the Plan:

a.  In the event that the Bankruptcy Court determines, by Final Order or judgement

in that certain adversary proceeding captioned as *Clear Channel Spectacolor, LLC*

*v. Times Square JV, LLC and CPTS Hotel Lessee*, Adversary Proceeding Number

23-01005 (JPM) (the "Clear Channel Adversary Proceeding") that the Lease was

or is not terminated or expired, the Lease shall be assumed by TSJV and CPTS, or

their respective successors or assigns, in each case pursuant to 11 U.S.C. §365. If

it is determined by Final Order or judgement in the Clear Channel Adversary

Proceeding that the Lease was or is terminated or expired, then assumption or

rejection of the Lease pursuant to 11 U.S.C. §365 shall be moot.

b.  After the date of entry of this Confirmation Order, and pending resolution of the

Clear Channel Adversary Proceeding by a Final Order or judgment, or written

agreement of the parties in the Clear Channel Adversary Proceeding, Clear

Channel, TSJV, CPTS and their respective successors or assigns shall each comply

with all monetary and non-monetary obligations as and when imposed under the

Lease and this Confirmation Order.

c.  Except for any obligations related to the Clear Channel Secured Claim (defined

below), within ten (10) days after the date of entry of this Confirmation Order,

TSJV shall pay Clear Channel $245,863.50 pursuant to section 5 of the Fifth

Amendment and within ten (10) days of its receipt of the foregoing amounts from

TSJV, Clear Channel shall pay CPTS $107,274.21, each in full satisfaction of all

amounts due under the Lease as of the date hereto (other than the Clear Channel Secured Claim).

d. In the event the Bankruptcy Court determines by Final Order or judgement in the Clear Channel Adversary Proceeding that the Lease was or is terminated, TSJV, CPTS and the Reorganized Debtor shall each have the right to seek disgorgement of any net amounts received from a Debtor or the Reorganized Debtors for any periods following the effective date of such termination or expiration.

e. Notwithstanding any other conflicting provisions of the Amended Plan (including Sections 3.3(b) and 7.4) or this Order, the following provisions shall control with respect to the "Clear Channel Secured Claim"[6] and "Clear Channel Mechanics Lien"[7], and the Amended Plan is deemed amended as follows:

   i. *Classification. The Clear Channel Secured Claim shall be classified as a Class 2d Secured Claim.*

   ii. *Treatment. The legal, equitable, and contractual rights of the Clear Channel on account of an Allowed Clear Channel Secured Claim are unaltered by the Plan. Except to the extent that a Holder of an Allowed Clear Channel Secured Claim agrees to less favorable treatment, on the*

---

[6] The Clear Channel Secured Claim means the claim subject of that certain proof of claim filed in these proceedings by Clear Channel with Stretto on January 5, 2023 in the amount of $269,687.50 at Claim No. 1.

[7] The Clear Channel Mechanics Lien means that certain Notice Under Mechanic's Lien Law in the amount of $269,687.50 filed with the New York County Clerk on June 14, 2022 as referenced in the Clear Channel Secured Claim.

*later of the Effective Date and the date that is ten (10) Business Days after the date such Clear Channel Secured Claim becomes an Allowed Claim, the Holder of an Allowed Clear Channel Secured Claim shall receive, on account of such Allowed Clear Channel Secured Claim, Cash in an amount equal to the Allowed amount of such Claim.*

iii.   *Claim Allowance Procedure. Any objection to the Clear Channel Secured Claim shall be Filed on or before thirty (30) days after the Effective Date. The failure of the Debtors, Reorganized Debtors, or any party of interest with standing to File an objection to the Clear Channel Secured Claim on or before thirty (30) days after the Effective Date shall result in the Clear Channel Secured Claim being deemed an Allowed Clear Channel Secured Claim in the amount and as set forth in the Clear Channel Secured Claim. If the Debtors, Reorganized Debtors, or any party of interest with standing, files an objection to the Clear Channel Secured Claim on or before thirty (30) days after the Effective Date, the Clear Channel Secured Claim shall be determined by Final Order or judgment of the Bankruptcy Court pursuant to Article X of the Amended Plan or written agreement of Clear Channel and the objecting party.*

iv.   *Preservation of Claim and Lien.  Subject to completion of the foregoing Claim Allowance Procedure in subsection (c), nothing herein shall be (a) deemed as a waiver of, or otherwise modify any rights of Clear Channel as to its Secured Claim or Mechanics' Lien; (b) discharge, waive or release the Mechanics' Lien; (c) constitute an admission as to the validity, amount or*

*priority of any claim or lien by Clear Channel against the Debtors or a promise or requirement to pay any claim; (d) constitute a waiver of the Debtors' rights to dispute any claim by Clear Channel or assert any defenses or counterclaims to any such claim; (e) constitute a waiver or limitation of any claim, cause of action, right or defense of the Debtors against Clear Channel; (f) constitute a waiver or limitation of any claim, cause of action, right or defense of Clear Channel against the Debtors or regarding the Lease; or (g) prejudice the parties' rights under the Lease or otherwise.*

v. *Forbearance. Subject to completion of the foregoing Claim Allowance Procedure in subsection (c), and so long as TSJV and CPTS each comply with all of their monetary and non-monetary obligations as and when imposed under the Lease, Clear Channel shall forbear from exercising its alleged rights to terminate or exercise any other remedies under the Fifth Amendment.*

vi. *Impairment and Voting. The Allowed Clear Channel Secured Claim is Unimpaired. Holders of such Claims are conclusively presumed to have accepted the Amended Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Amended Plan, and the votes of such Holders will not be solicited with respect to such Allowed Clear Channel Secured Claims, except, and as more specifically set forth in #.5 below, the presumed acceptance of the Amended Plan by Clear Channel shall not be deemed as an "opt-in" or*

*acceptance by Clear Channel as to any of the Release and Exculpation provisions of the Amended Plan.*

vii. The Release provisions set forth in Article IX of the Amended Plan, including Section 9.3(b) and Section 9.5(a) (with respect to Section 9.5(a), to the extent of any issues adjudicated in the Clear Channel Adversary Proceeding), shall not apply to Clear Channel, the Lease, or the Clear Channel Secured Claim and the rights, liabilities and obligations as between Clear Channel, TSJV and CPTS with respect to the Lease shall be determined in the Clear Channel Adversary Proceeding and shall abide a resolution thereof. Clear Channel, TSJV and CPTS specifically reserve and preserve all rights, claims and defenses they may possess pending a resolution of the Clear Channel Adversary Proceeding. For the avoidance of doubt, confirmation of the Amended Plan shall not operate to release any rights or claims of Clear Channel against the Debtors, Reorganized Debtors or any other person or entity, nor shall it operate to release any rights or claims of the Debtors, Reorganized Debtors or any other person or entity against Clear Channel. This provision shall be deemed a proper and effective "opt-out" election by Clear Channel under the Amended Plan. Nothing herein shall be deemed as a waiver of, or otherwise modify any rights of Clear Channel as to its Secured Claim or Mechanics' Lien, nor shall it waive or modify any rights of Clear Channel under the Lease. For the avoidance of doubt, nothing in Section 9.4 of the Plan shall operate to release the rights, claims or defenses of Clear Channel that are otherwise reserved herein.

44.    **Authorization to Consummate**.  The Debtors are authorized to consummate the

Plan and the Restructuring at any time after entry of this Confirmation Order subject to satisfaction,

or waiver in accordance with Section 8.3 of the Plan, of the conditions precedent to the Effective

Date set forth in Article VIII of the Plan.

45.    **Conditions Precedent to the Effective Date**.  The Plan shall not become effective

unless and until the conditions set forth in Article VIII of the Plan have been satisfied or waived

pursuant to Section 8.3 of the Plan, provided that the condition listed in Section 8.1(k) of the Plan

shall not be waived without the written consent of HHF.

46.    **Nonseverability of Plan Provisions Upon Confirmation**.  Each provision of the

Plan is:  (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may

not be deleted or modified without the Debtors' consent (and subject to other consents and

consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and

(c) nonseverable and mutually dependent.

47.    **Post-Confirmation Modifications**.  Subject to the terms of the Plan and without

need for further order or authorization of the Bankruptcy Court, the Debtors or the Reorganized

Debtors, as applicable, are authorized and empowered to make any and all modifications to any

and all Plan Documents that are necessary to effectuate the Plan that do not materially modify the

terms of such documents and are consistent with the Plan.  Subject to certain restrictions and

requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and

those restrictions on modifications set forth in the Plan, the Debtors and the Reorganized Debtors

reserve their respective rights prior to the Effective Date to withdraw, alter, amend, or modify

materially the Plan with respect to such Debtor or Reorganized Debtor, as applicable, and, to the

extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify

the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or this

Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.  Any

such modification or supplement shall be considered a modification of the Plan and shall be made

in accordance with Section 11.3 of the Plan.

48.    **Reversal/Stay/Modification/Vacatur of Confirmation Order**.    Except as

otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation

Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any

other court, such reversal, stay, modification, or vacatur shall not affect the validity or

enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or

undertaken by the Debtors prior to the effective date of such reversal, stay, modification, or

vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation

Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this

Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall

be governed in all respects by the provisions of this Confirmation Order and the Plan or any

amendments or modifications thereto.

49.    **Applicable Non-bankruptcy Law.**  The provisions of this Confirmation Order,

the Plan, and related documents, or any amendments or modifications thereto, shall apply and be

enforceable notwithstanding any otherwise applicable non-bankruptcy law.

50.    **Waiver of Filings**.  Any requirement under section 521 of the Bankruptcy Code or

Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the

Bankruptcy Court or the Office of the United States Trustee for the Southern District of New York

(the "*U.S. Trustee*") (except for monthly operating reports or any other post-confirmation

reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

51.     **Notice of Entry of the Confirmation Order and Effective Date**.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall use commercially reasonable efforts to serve notice of the entry of this Confirmation Order and notice of the Effective Date, substantially in the form annexed hereto as **Exhibit B**, to all parties who hold a Claim or Interest in these Chapter 11 Cases, the U.S. Trustee, and other parties in interest.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of confirmation of the Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

52.     **Notice of Individual Deposit Credit.**    As contemplated by section 3.3(f) of the Plan, as soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall use commercially reasonable efforts to provide notice of the Individual Advanced Deposit Credits to each Individual Advanced Depositor through sending notice to the Third Party Hotel Reservation Companies in the event the Reorganized Debtors do not have such Individual Advanced Depositor's address.

53.     **Waiver of Stay.**    The requirements of Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry are hereby waived. The terms of this Confirmation Order shall be immediately effective and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062.  Immediately upon the entry of this Confirmation Order, subject to the occurrence of the Effective Date, the provisions of the Plan shall be binding upon and inure to the benefit of (i) the Debtors, (ii) the Reorganized Debtors, (iii) every Holder of a Claim against or Equity Interest in any Debtor, regardless of whether the

Claim or Equity Interest of such Holder is Impaired under the Plan or whether such Holder has accepted the Plan, (iv) each Person acquiring property under the Plan, (v) any other party in interest, (vi) any Person making an appearance in the Chapter 11 Cases, and (vii) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

54.     **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

55.     **References to Particular Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order.

56.     **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

57.     **Effect of Conflict**.  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

58.     **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

59.    **Retention of Jurisdiction**.    Except as set forth in the Plan or this Confirmation

Order, the Bankruptcy Court may properly, and, upon the Effective Date, shall retain jurisdiction

over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set

forth in Article X of the Plan and section 1142 of the Bankruptcy Code.


Dated: March 21, 2023
        New York, New York

                                        /S/ John P. Mastando  III_____
                                        HONORABLE JOHN P. MASTANDO III

**Order submitted by:**


**SEWARD & KISSEL LLP**
John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile:  (212) 450-8421

*Counsel to the Debtors and*
*Debtors in Possession*

<u>Exhibit A</u>

**Plan**

## Exhibit B

Proposed Confirmation Order Notice

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile:  (212) 450-8421

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Times Square JV LLC, *et al.*,[1] | Case No. 22-11715 (JPM) |
| | (Jointly Administered) |
| Debtors. | |

NOTICE OF (I) ENTRY OF ORDER **CONFIRMING**
**DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) GRANTING**
**RELATED RELIEF**

**PLEASE TAKE NOTICE** that on March [●], 2023, the Honorable John P. Mastando III, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***"), entered the order [Dkt. No. [●]] (the "***Confirmation Order***") confirming the *Debtors' Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 21], as further amended, altered, modified, revised, or supplemented on January 30, 2023 [Dkt. No. 156], February 3, 2023 [Dkt. No. 173], on March 14, 2023, the *Debtors' Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [Dkt. No. 248] and

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Times Square JV LLC (6123), CPTS Hotel Lessee LLC (6401), 1601 Broadway Holding LLC (3359), and 1601 Broadway Owner LLC (6463).  The mailing address for the Debtors is 15 East Putnam Avenue, Suite 406, Greenwich, CT 06830.

on March 16, 2023, the *Debtors' Third Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [[Dkt. No. _____]] (the "**Plan**").[2]

      **PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on **[●], 2023**.

      **PLEASE TAKE FURTHER NOTICE** that copies of Confirmation Order and the Plan, as well as other documents filed in these Chapter 11 Cases can be found on the docket of these Chapter 11 Cases and can also be downloaded free of charge from the website of the Debtors' noticing and claims agent, Stretto, at https://cases.stretto.com/timessquarejv.

      **PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain release, exculpation, injunction, and related provisions in Article IX of the Plan.

      **PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order, and the provisions thereof, are binding on the Debtors and any Holder of a Claim against or Interest in the Debtors and such Holder's respective successors, assigns, and designees, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder or entity voted to accept the Plan.

      **PLEASE TAKE FURTHER NOTICE** that the Bar Date for filing claims based on the rejection of Executory Contracts or Unexpired Leases is the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. Eastern Time on the date that is thirty (30) days following service of an order (including the Confirmation Order) approving the rejection of any executory contract or unexpired lease of the Debtors. To the extent any executory contract or unexpired lease is rejected pursuant to the terms of the Plan, the Rejection Damages Bar Date shall be thirty (30) days after entry of the Confirmation Order.

      **PLEASE TAKE FURTHER NOTICE** that from and after this date, if you wish to receive notice of filings in this case, you must request such notice with the clerk of the Bankruptcy Court and serve a copy of such request for notice on counsel to the Reorganized Debtors. You must do this even if you filed such a notice prior to the Effective Date.

      **PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

---

[2]    Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

Dated:  March [●], 2023
New York, New York

/s/  *[Draft]*
_____

**SEWARD & KISSEL LLP**
John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile:  (212) 450-8421

*Counsel to the Debtors and*
*Debtors in Possession*